BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Elaine A. Ryan (*Admitted pro hac vice*)
Patricia N. Syverson (203111)
Lindsey Gomez-Gray (*Admitted pro hac vice*)
2325 E. CAMELBACK ROAD, Suite 300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez@bffb.com
Tel: (602) 274-1100
Fax: (602) 274-1199

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, CA 92130
mmeucke@bffb.com
Tel: (619) 756-7748
Fax: (602) 274-1199

STEWART M. WELTMAN LLC
Stewart M. Weltman (*Admitted pro hac vice*)
53 W. Jackson, Suite 364
Chicago, IL 60604
sweltman@weltmanlawfirm.com
Telephone: (312) 588-5033

[*Additional Counsel Appear On Signature Page*]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LERMA, an Individual, and NICK PEARSON, an Individual, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation, and SCHIFF NUTRITION GROUP, INC., a Utah Corporation <br><br> Defendants | Case No.: 3:11-CV-01056-CAB (MDD) <br><br> **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Magistrate Judge Mitchell D. Dembin |

## TABLE OF CONTENTS

PAGE

I.   Removal Of The Reconstruction Representations Is Fair, Reasonable And Adequate Injunctive Relief ....................................................................... 1

A.  The Injunctive Relief Labeling Changes Are Meaningful And Will Benefit Current Class Members And The Marketplace As A Whole ................................................................................................... 1

B.  The Reconstruction Representations Are Markedly Different Than The Remaining Representations On The Product Labels ....................... 5

C.  At a Minimum, The Label Changes Are Valued Between ███████████████████████ ........................................................ 7

II.  The Amended Proof-Of-Purchase Component Of The Settlement Is Fair, Reasonable And Adequate ................................................................ 11

III.  The $2 Million Minimum Uncapped Damages Fund Is Fair, Reasonable And Adequate ......................................................................................... 12

IV.  Inconsistencies In The Settlement Have Been Corrected ...........................

V.   Conclusion ....................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Colgan v. Leatherman Tool Grp., Inc.*
      135 Cal. App. 4th 663 (2006)..............................................................................4

*Delacruz v. Cytosport, Inc.*
      No. C 1103532 CW, 2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ..............2

*Dennis v. Kellogg Co.*
      697 F.3d 858 (9th Cir. 2012)..........................................................................4

*Hanlon v. Chrysler Corp.*
      150 F.3d 1011 (9th Cir. 1998)...................................................................11, 12

*Hill v. Roll Int'l Corp.*
      128 Cal. Rptr. 3d 109 (2011)..........................................................................2

*Hughes v. Ester C Co.*
      930 F. Supp. 2d 439 (E.D.N.Y. 2013)............................................................2

*In re Ferrero Litigation*
      No. 12-56469, 2014 WL 3465685 (9th Cir. July 16, 2014)........................8. 9

*In re Jiffy Lube Int'l., Inc. Text Spam Litig.,*
      No. 3:11-MD-226-JM (JMA), 2012 WL 4849617
      (S.D. Cal. Oct. 10, 2012) ................................................................................9

*In re Tobacco II Cases*
      46 Cal. 4th 298 (2009)....................................................................................4

*In re Vioxx Class Cases*
      180 Cal. App. 4th 116 (2009)..........................................................................6

*Kwikset Corp. v. Super. Ct.*
      51 Cal. 4th 310 (2011)....................................................................................2

*Lavie v. Procter & Gamble Co.*
      105 Cal. App. 4th 496 (2003)......................................................................4, 6

**PAGE**

*Negrete v. Allianz Life Insurance Co.*

     No. CV 06-6838 CAS (MANx), 2012 WL 6737390

     (C.D. Cal. Dec. 27, 2012)..................................................................................2

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*

     688 F.2d 615 (9th Cir. 1982)..................................................................11

*Pappas v. Naked Juice Co. of Glendora, Inc.*

     No. CV11-08276 JAK (PLAx) (C.D. Cal.) (August 7, 2013) ........................9

*Pearson v. NBTY, Inc.*

     No. 11 CV 7972, 2014 WL 30676 (N.D. Ill. 2014) ...........................1, 10, 12

*Perez v. Asurian Corp.*

     501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...........................................................10

*Rodriguez v. W. Publ'g Corp.*

     563 F.3d 948 (9th Cir. 2009)..................................................................11

**STATUTES**

Cal. Bus. & Prof. Code § 17203 .....................................................................4

Cal. Civ. Code § 1760...................................................................................4

Cal. Civ. Code §1782(d)................................................................................4

During the July 10, 2014 Preliminary Approval hearing, the Court requested the parties address the following issues by supplemental memoranda: (1) the significance of the representations to be removed from the Product labels; (2) the value of the injunctive relief; (3) whether the parties were willing to increase the dollar amount available for proof-of-purchase claims; (4) whether the parties anticipate claims exceeding the $2 million floor; (5) certain, limited inconsistencies in the Settlement papers; and (6) the ability of, and need for, the Court to stay other lawsuits filed by or on behalf of members of the Settlement class. Plaintiffs Luis Lerma, Nick Pearson and Muriel Jayson submit this Supplemental Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Settlement to address issues 1 through 5. Defendants' concurrently filed Supplemental Memorandum in Support of Preliminary Approval addresses issue 6, as well as separately addressing issue 3.[1]

## I. Removal Of The Reconstruction Representations Is Fair, Reasonable And Adequate Injunctive Relief

### A. The Injunctive Relief Labeling Changes Are Meaningful And Will Benefit Current Class Members And The Marketplace As A Whole

Schiff has agreed to stop representing that the Covered Products "repair joints," "repair cartilage," "rebuild joints," "rebuild cartilage," "rejuvenate joints," and "rejuvenate cartilage" ("the reconstruction representations") for at least 24 months following the approval of this Settlement. Ex. 1, Amended Settlement Agreement at 13-14.[2]

---

[1] Plaintiffs incorporate by reference the arguments made in their original Memorandum in Support of Unopposed Motion for Preliminary Approval of Settlement. *See* Dkt. No. 81-1.
[2] Schiff has an incentive to keep these labeling changes in place after the 24-month period expires because the Amended Settlement Agreement provides that as long as it keeps the labeling changes in place, no Class member who purchases a Covered Product after the 24-month period can sue Schiff on any claim relating to the labeling changes that was or could have been asserted in the litigation. *See* Ex. 1 at 28-29.

1    Schiff's removal of the reconstruction representations is a significant

2 benefit, especially in light of the important role labels and marketing play in

3 driving consumer behavior:

4
         Simply stated: labels matter. The marketing industry is based on the
5        premise that labels matter, that consumers will choose one product
         over another similar product based on its label and various tangible
6        and intangible qualities they may come to associate with a particular
         source. An entire body of law, trademark law, exists to protect
7        commercial and consumer interests in accurate label representations . .
         . because consumers rely on the accuracy of those representations in
8        making their buying decisions.

9 *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) (internal quotes and

10 citations omitted). And, as the court in *Negrete v. Allianz Life Insurance Co.*, No.

11 CV 06-6838 CAS (MANx), 2012 WL 6737390, at *20 (C.D. Cal. Dec. 27, 2012),

12 noted: "'Consumers are nearly certain to rely on prominent (and prominently

13 marketed) features of a product which they purchase,' particularly where there are

14 not otherwise compelling reasons for purchasing a product that is allegedly worth

15 less than the purchase price" (internal citations omitted).[1]

16    Not surprisingly then, the reconstruction representations are key reasons

17 consumers give for purchasing the Covered Products. A 2006 focus group study

18 performed for Schiff found that

19

20

21                Ex. 2, SCHIFF183402 at 16 (emphasis in original). These

22 representations were "

23

24 [1] *See also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013) ("The
   marketing industry is based on the premise that labels matter, that consumers will
25 choose one product over another similar product based on its label and various
   tangible and intangible qualities they may come to associate with a particular
26 source." (citing *Kwikset*)); *Delacruz v. Cytosport, Inc.*, No. C 1103532 CW, 2012
   WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012) (same proposition – labels matter);
27 *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (2011) ("We agree
   wholeheartedly that 'labels matter,' all labels...").

28

██████████████████████████████████████████████████████████

" *Id.*

A 2007 focus group study similarly confirmed the importance of the reconstruction representations:

████████████████████████████████████████████████████████████

Ex. 3, SCHIFF183299 at 319-20.

In 2011, the Gallup Study of Supplements for Joint Health interviewed ("Gallup") reported that ████████████████████████████████████████ ████████████████████████████████████████ Ex. 4 at 56.[1]

And, as recently as July 29, 2014, an online consumer survey of glucosamine product users performed at Plaintiffs' counsels' request, revealed a vast majority of consumers identified the reconstruction representations as important reasons for purchasing the Covered Products. And, 86% specifically identified "rebuild cartilage" as a very important reason to buy the Covered Products. Ex. 5, Decl. of Thomas J. Maronick.

Because the reconstruction representations are a key driver of Product sales, their removal is meaningful and a significant benefit to the Class. Their removal directly benefits large numbers of current class members – ████████████ ████████████████████████████████ *See* Ex. 6, SCHIFF00170994 ( ███████ ). And, an estimated ████████████████████████████ ████████████████████████████ Ex. 4, Gallup Study at 86.

Removal of the reconstruction representations also furthers the important

---

[1] Plaintiffs contend that the repair/rebuild representations lead consumers to believe that the progression of the joint and cartilage deterioration will slow and hopefully reverse and improve.

social goals of providing what Plaintiffs believe will be more truthful information in the marketplace. California's consumer fraud statutes allow private plaintiffs to obtain injunctive relief. *See* Calif. Civil Code §1782(d); Cal. Bus. & Prof. Code § 17203. And, the statutes' primary purpose is the eradication of consumer fraud.[1]

The FTC Guidance further establishes that the removal of the reconstruction representations constitutes the removal of highly material information and thus is important and substantial relief. For example, the "FTC Policy Statement on Deception," issued in 1986 (http://www.ftc.gov/bcp/policystmt/ad-decpt.htm) states: "The Commission presumes that express claims are material," noting that promotional messages by the company reflect a belief that consumers are interested in those messages. Similarly, the Policy states that: "The Commission also considers claims or omissions material if they significantly involve health, safety, or other areas with which the reasonable consumer would be concerned. Depending on the facts, information pertaining to the central characteristics of the product or service will be presumed material." The Policy notes that information has been found material where it concerns the purpose, safety, efficacy, or cost of the product or service. According to the Commission, "a 'material' misrepresentation or practice is one which is likely to affect a consumer's choice of

---

[1] Cal. Civ. Code § 1760 (the CLRA is designed "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection"); *Dennis v. Kellogg Co.,* 697 F.3d 858, 867 (9th Cir. 2012) ("'The UCL is designed to preserve fair competition among business competitors and protect the public from nefarious and unscrupulous business practices.'"); *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("The purpose of [injunctive] relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks."); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 703 (2006) (noting that the settlement there "resulted in a significant benefit for a substantial number of people by causing [Defendant] to change its labeling and advertising practices and by enjoining it from making future misleading representations"); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 503 (2003) ("[W]hether an advertisement is deceptive under the UCL ... certainly has important public policy implications for California consumers and businesses.").

or conduct regarding a product. In other words, it is information that is important to consumers."

Here, there are no safety issues with the Covered Products.[1] The dispute concerns Products' efficacy. As such, Plaintiffs believe there can be no doubt that the labeling changes, removing the key reconstruction representations made about the Products by Schiff, provides Class members and consumers with more truthful information concerning the Covered Products. This accomplishes an important social goal that should be assigned substantial value in determining the fairness and adequacy of the Settlement.

**B.     The Reconstruction Representations Are Markedly Different Than The Remaining Representations On The Product Labels**

The remaining representations on the Product labels, including the term "strengthen," only promise some form of joint maintenance. Their continued presence are the by-product of compromise – no different than settling a damages claim for less money than might be obtained if the matter were tried to judgment. Moreover, to promise one's current joint condition will be repaired and improved is far more significant than to say one's current condition will remain the same – there is no strengthening lost or damaged cartilage. As demonstrated above, this is a distinction that will not go unnoticed by the Class. *See* Ex. 2, SCHIFF183402; Ex. 3, SCHIFF183299.

For example, ███████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 7, SCHIFF184526; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (in determining whether a misrepresentation is likely to deceive a

---

[1] *See, e.g.*, Miller, K., & Clegg, D., *Glucosamine and Chondroitin Sulfate*, 37 Rhem. Dis. Clin. N. Am. 103-118 (2011).

reasonable consumer, "[t]he law focuses on a reasonable consumer who is a member of the target population"); *Lavie*, 105 Cal. App. 4th at 508 (same). By definition, osteoarthritis occurs when the protective cartilage on the ends of the bone wears down, causing pain and difficulty of movement as the bones rub together.[1]

Not surprisingly, a 2006 consumer survey performed on behalf of Defendants specific to the Covered Products, reported ███████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ Ex. 2, SCHIFF183402 at 16. Tellingly, ███████████████████████████████████████████████ *Id.* ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████

Strengthening, on the other hand, means none of this. Strengthening is meaningless in the context of cartilage loss. You cannot strengthen cartilage you no longer have. At best, it means that any remaining cartilage will be strengthened. But cartilage is not like muscle – thus promising that it will purportedly get stronger does not mean that it gets larger. It most certainly does not mean that lost cartilage will be replaced.

Thus, the continuation of the "strengthens" representations on the Covered Products' labels in no way undercuts the importance of the removal of the key

_____

[1] National Institutes of Arthritis and Musculoskeletal Skin Diseases, Osteoarthritis, available at http://www.niams.nih.gov/Health_Info/Osteoarthritis; *see also* National Institutes of Health's Medline Plus, Cartilage Disorders, available at http://www.nlm.nih.gov/medlineplus/ cartilagedisorders.html ("Osteoarthritis results from breakdown of cartilage" and "Injured, inflamed, or damaged cartilage can cause symptoms such as pain and limited movement.").

reconstruction representations. Consequently, the injunctive relief achieved is fair, adequate and reasonable as it is meaningful and will benefit current Class members and the consumer marketplace as a whole.

**C.     At a Minimum, The Label Changes Are Valued Between ███████**
**███████**

Dr. Keith Reutter, an expert economist, has estimated the value of the label changes to be between ███████████████████████████████████ Ex. 8, Decl. of Keith Reutter, Ph.D at ¶17. ████████████████████████████████████████████
█████████

To ascertain how many consumers purchased the Covered Products based on the reconstruction representations, Dr. Reutter ███████████████████████ ██████████████ which reported ████████████████████████████████████ ████████████████████████████████████████████████████████████████████
Ex. 4, Gallup Study. Dr. Ruetter cross-checked these results ██████████████████ ████████████████████████████████████████████████████ specific to the Covered Products that reported ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████ Ex. 2, SCHIFF183402 at 16. A 2007 focus group ████████████████████████████████████ Ex. 3, SCHIFF 183299 at 319-320. And, in a July 2014 on-line survey of glucosamine users who were shown the Move Free Total Joint Health Advanced Triple Strength Product label, 86% specifically identified "rebuild joints" as a very important reason to buy the Product. Ex. 5, Maronick Decl.

Dr. Ruetter ██████████████ to conservatively estimate the value of the injunctive relief specific to the reconstruction representations ██████████████
████████████████████████████████████████████████████████████████████

**█████████████████████████████████████**

**████████████████████** Ex. 8, Reutter Decl. at ¶14. These methodologies

yielded a valuation of **██████████████████**, respectively. *Id.*

at ¶¶15-17.

The estimated values are conservative because Dr. Reutter applied the most

conservative assumption at each step in the valuation process – **████████**

**███████████████████████████████████**. *Id.* at ¶¶15-16, 18; *see*

*also* Ex. 9, Decl. of Ildiko Volner.

The injunctive relief conservatively valued at between **████████**

**████████**, plus the $2 million minimum uncapped damages fund, makes this

Settlement more than fair, reasonable and adequate. The court need look no

further than the Ninth Circuit's recent decision in *In re Ferrero Litigation*, 12-

56469, 2014 WL 3465685 (9th Cir. July 16, 2014), for confirmation. There, the

Ninth Circuit upheld the district court's $985,920 fee award in a settlement with a

$550,000 fund and changes to the product label that pale in comparative import to

the consumer to those here. The injunctive relief consisted of more nutritional

information on the label and replacing "[a]n example of a tasty yet balanced

breakfast" with "[t]urn a balanced breakfast into a tasty one" on the back of the

label so as not to misleadingly suggest the product is healthy. *See Id.* at *1; Ex. 10,

Motion for Final Approval, No. 12-56469, Dkt No. 114-1. The *Ferrero* plaintiffs

valued that injunctive relief at $14 million, calculated by relying upon sales

figures, like Dr. Reutter has done here.

The Ninth Circuit rejected the objectors' arguments that the injunctive relief

did not justify a fee award because the "injunctive relief is too speculative" and

"benefits 'society at large' rather than the class members." *In re Ferrero*, 2014 WL

3465685, at *1. The Ninth Circuit found that the injunctive relief was "meaningful

and consistent with the relief requested in plaintiffs' complaint." *Id.* While this

finding was made in relation to the fee award, it applies equally to the fairness, reasonableness and adequacy of the Settlement.

If the far less robust back-of-the-label changes in *Ferrero* withstood objection on appeal, there can be no doubt that the instant Settlement is fair, reasonable and adequate. Unlike in *Ferrero*, the label changes are substantial, requiring Schiff to remove the all-important reconstruction representations from its Product packages. Further, the injunctive relief is conservatively valued between ███████████████████████ by an expert economist who incorporated data from an independent third party, █████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████ In addition, there is an uncapped $2 million minimum claim fund. Together, the uncapped claim fund and removal of the reconstruction representations – which are a proven key driver of Product sales – are "meaningful and consistent with the relief requested in plaintiffs' complaint". Thus, the important injunctive relief obtained should be considered in the Court's determination of the reasonableness of the Settlement and found to be both fair and adequate. *See, e.g.*, *Pappas v. Naked Juice Co. of Glendora, Inc.*, No. CV11-08276 JAK (PLAx) (C.D. Cal.), Order at 5 (August 7, 2013) (court took into account "injunctive relief valued at $1.4 million" as part of the settlement fund for purposes of determining whether the settlement was reasonable) (attached as Exhibit 11); *In re Jiffy Lube Int'l., Inc. Text Spam Litig.*, No. 3:11-MD-226-JM (JMA), 2012 WL 4849617, at *2 (S.D. Cal. Oct. 10, 2012) (preliminarily approved settlement as fair and reasonable when considering all aspects of the recovery to the class, including the injunctive relief); *Perez v. Asurian Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) (finding the prospective injunctive relief at issue

"weigh[s] heavily in favor of approving this Settlement").

In their separate Supplemental Memorandum in Support of Preliminary Approval, Defendants cite to *Pearson v. NBTY, Inc.*, No. 11 CV 7972, 2014 WL 30676, *3-*5 (N.D. Ill. 2014), in which the court approved a similarly structured settlement. In *Pearson*, while the court found that the injunctive relief provided substantial benefits,[1] it held, albeit in Plaintiffs' view incorrectly, that the injunctive relief did not provide any benefits to current class members. *Id.* at *5. This part of the court's ruling in *Pearson* is currently on appeal to the Seventh Circuit and awaiting argument and ruling. Nevertheless, here, the evidence clearly demonstrates that the injunctive relief does benefit current Class members. ██████

██████████, Dr. Reutter (Plaintiffs' expert) has determined that, on average, ███████████████████████████████████████ ██████ Ex. 8 at ¶11 (citing SCHIFF00170994).[2] Further, a 2011 Gallup Study found that 48 percent of glucosamine users give as a reason for taking glucosamine "to slow the progression of arthritis/joint problems." Ex. 4. Thus, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. 8 at ¶13. Importantly, the repeat purchase rate was used by Dr. Reutter in valuing the injunctive relief because those repeat purchasers are the Class members who will realize a benefit from the injunctive relief. *Id.*; *see also* ¶¶15-16.

## II. The Amended Proof-Of-Purchase Component Of The Settlement Is Fair, Reasonable And Adequate

---

[1] Like here, the injunctive relief required the removal of all rebuilds/renews language but allowed "strengthens" to remain on the label.
[2] As to Move Free Advanced specifically, Schiff's marketing materials report ██████ ████████████ Ex. 11, SCHIFF00170873 at 3 (emp. orig.).

Under the Amended Settlement, the parties increased the claim amount available for proof-of-purchase claims. Class members with proof-of-purchase are entitled to reimbursement of $10 (originally it was $5) for each bottle purchased up to 5 bottles per household. Ex. 1 at 12-13. The $10 refund is approximately ███████████████████████████████████████████████. Ex. 8 at ¶8. On average a bottle lasts one month. Dkt. No. 81-3.

The ability to recover 50% of the price paid for a 5-month supply of the Covered Products is meaningful relief. Class members who continue to purchase the Covered Products after 5 months are satisfied with those Products, because, as Plaintiffs contend, they are likely experiencing some form of a placebo effect. Dkt. No. 81-4, at ¶22 (Plaintiffs' expert opines that there is upwards of a 30-40% placebo effect with the Covered Products).

In evaluating the fairness of the proof-of-purchase consideration, it is not the role of the court to second-guess the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982)); *accord Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. For the above stated reasons, the amended proof-of-purchase component of the

1 Settlement is fair, reasonable and adequate.

2 **III.    The $2 Million Minimum Uncapped Damages Fund Is Fair, Reasonable**
3 **And Adequate**

4        The Settlement provides for an uncapped $2 million minimum claim fund.

5 Because there is no cap, every valid claim will be paid.  A $2 million floor was

6 established to ensure a meaningful amount of money would be paid to the Class

7 members.    Given the relatively low "take-rate" in over-the-counter product

8 consumer fraud class actions, and Class counsel's recent experience in the

9 analogous Rexall glucosamine product litigation where less than $1 million in

10 claims were made,[1] a $2 million floor was set.  In the event less that $2 million in

11 claims are made, there will be tripling/doubling/pro-rata distributions to claimants

12 until $2 million is paid out.  Class members will receive all monies – there is no *cy*

13 *pres* component.  A minimum $2 million pay-out is fair, reasonable and adequate

14 as it ensures a meaningful amount of money will be paid to the Class but is not so

15 great as to provide an unduly large windfall to any individual Class member.

16 **IV.    Inconsistencies In The Settlement Have Been Corrected**

17        At the Preliminary Approval hearing, the Court drew counsels' attention to

18 certain inconsistencies in the preliminary approval papers.  As reflected in the

19 redlined Amended Settlement Agreement, these inconsistencies have been

20 corrected.  Specifically, the Amended Settlement Agreement provides that: (1) opt-

21 outs may be submitted by mail <u>or</u> online; (2) claim forms may be submitted by

22 mail <u>or</u> online; and (3) Judge Mitchell D. Dembin is identified as overseeing the

23 Proposed Settlement.  *See* Exs. 12-15.[2]

24 _____

25 [1]  *See Pearson v. NBTY, Inc., et al.*, 11-cv-07972 (N.D. Ill.), Plaintiffs'
Supplemental Submission Regarding Total Payments To Be Made To Class
26 Members, Dkt. No. 141.
[2]  Clean versions of the Amended Long Form Notice and Published Summary
27 Notice are attached hereto as Exs. 16-17, respectively.

28

## V. Conclusion

Based upon the foregoing and Plaintiffs' initial Memorandum In Support Of Preliminary Approval, Plaintiffs respectfully request that the Court enter an order preliminarily approving the Settlement.

DATED:    September 15, 2014        BONNETT, FAIRBOURN
                                    FRIEDMAN & BALINT, P.C.


                                    */s/Patricia N. Syverson*
                                    Elaine A. Ryan (*Admitted pro hac vice*)
                                    Patricia N. Syverson (Bar No. 203111)
                                    Lindsey Gomez-Gray (*Admitted pro hac vice*)
                                    2325 E. Camelback Road, Suite 300
                                    Phoenix. Arizona 85016
                                    eryan@bffb.com
                                    psyverson@bffb.com
                                    lgomez@bffb.com
                                    Tel: (602) 274-1100
                                    Fax: (602) 798-5860


                                    Manfred P. Muecke (222893)
                                    600 W. Broadway, Suite 900
                                    San Diego, California 92101
                                    mmuecke@bffb.com
                                    Tel: (619) 756-7748
                                    Fax: (602) 274-1199


                                    STEWART M. WELTMAN, LLC
                                    Stewart M. Weltman (*Admitted pro hac vice*)
                                    53 W. Jackson , Suite 364
                                    Chicago, Illinois 60604
                                    sweltman@weltmanlawfirm.com
                                    Telephone:  312-588-5033


                                    Jeffrey I. Carton
                                    DENLEA & CARTON LLP
                                    One North Broadway, Suite 509
                                    White Plains, N.Y. 10601
                                    Telephone:  (914) 920-7400


                                    *Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic mail notice list. I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 15, 2014.

/s/*Patricia N. Syverson*
Patricia N. Syverson (203111)
BONNETT FAIRBOURN FRIEDMAN & BALINT
2325 E Camelback Road, Ste. 300
Phoenix, AZ 85016
(602) 274-1100