ANDREA L. PETRAY, SBN 240085
E-MAIL: apetray@marksfinch.com

**MARKS, FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Truth In Advertising, Inc.

JULIE NEPVEU (ADMITTED IN VIRGINIA)
(PRO HAC VICE APPLICATION PENDING)
E-MAIL: JNepveu@aarp.org

**AARP FOUNDATION LITIGATION**
601 E Street, NW
Washington, DC 20049
TELEPHONE: (202)434-2075

Attorneys for AARP

FILED
Mar 26 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ ArianaF    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LERMA, an Individual, NICK PEARSON, an Individual, On Behalf of Themselves and All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation and SCHIFF NUTRITION GROUP, INC., a Utah Corporation,<br><br>   Defendants. | CASE NO: 11-cv-1056-MDD<br><br>BRIEF OF *AMICI CURIAE* TRUTH IN ADVERTISING, INC. AND AARP IN OPPOSITION TO PROPOSED SETTLEMENT<br><br>Assigned to:<br>Magistrate Judge:<br>Hon. Mitchell D. Dembin<br><br>Date:        April 8, 2015<br>Time:        10:00 a.m.<br>Courtroom: 1E |

I

INTRODUCTION

The proposed settlement agreement in this case effectively allows defendants to continue with their deceptive marketing practices as alleged in the operative complaint. Pursuant to the terms of the agreement, defendants are only required to remove six specific phrases from the labels of their glucosamine supplements, all of which can simply be replaced with synonymous language to

convey the exact same message. In addition, defendants can return to the banned language in just two years while the nationwide class will be forever prohibited from suing defendants for false and deceptive advertising. For these reasons, Truth in Advertising, Inc., a national consumer advocacy organization dedicated to protecting consumers from false and deceptive advertising, and AARP, the leading organization representing the interests of people aged fifty and older, respectfully oppose the proposed settlement, and urge the Court to deny final approval of it.

## II

## INTEREST OF AMICI CURIAE

Truth in Advertising, Inc. (TINA.org) is a 501(c)(3) nonprofit organization dedicated to protecting consumers nationwide through the prevention of false and deceptive marketing. To further its mission, TINA.org investigates deceptive marketing practices and advocates before federal and state government agencies, as well as courts.

AARP is a nonprofit, nonpartisan organization with a membership that helps people turn their goals and dreams into real possibilities, strengthens communities and fights for the issues that matter most to families—such as healthcare, employment and income security, retirement planning, affordable utilities and protection from financial abuse. AARP is greatly concerned about marketing practices, like those alleged to be false in this case, which promise purported health benefits that the products cannot deliver. Older Americans spend hundreds of millions of dollars on glucosamine products each year, not only wasting their money but also potentially worsening their health and increasing their disability levels by delaying treatments that may actually be effective in alleviating joint pain and stiffness.

/ / / / /

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

2

11-cv-1056-MDD

As explained in detail in the attached Motion for Leave to File Brief as Amici Curiae in Opposition to Proposed Settlement, TINA.org and AARP have important interests and valuable perspectives on the issues presented in this case.[1] Participation of amici curiae will assist this Court in evaluating the proposed settlement in fulfillment of its fiduciary duty to protect the interests of the class. *See Jones v. GN Netcom, Inc.* (In re *Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 941 (9th Cir. 2011). *See also, e.g., Safari Club Int'l v. Harris,* 2015 U.S. Dist. LEXIS 4467, at *2-3 (E.D. Cal. Jan. 13, 2015).

### III

### ARGUMENT

The essence of plaintiffs' complaint is that defendants charge a premium price for their glucosamine supplements based on marketing claims that the supplements are "clinically tested" and will rebuild joint cartilage, improve joint function, and reduce joint pain, when there is no competent scientific evidence to support such marketing claims. Third Am. Compl. ¶¶ 3-5, 13, 24-25. Nonetheless, the proposed settlement will in no way hinder defendants' ability to continue making such claims to millions of aging Americans that are experiencing joint degeneration. The parties' proposed settlement restricts defendants from using a mere six phrases on their labels for only a two-year period. *See* Settlement Agreement and General Release, at ¶ IV. C. During this short moratorium, defendants are permitted to simply replace any of these phrases with synonymous language, thereby effectively eviscerating any

/ / / / /

/ / / / /

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), Amici state that this brief was not authored in whole or in part by any party or its counsel, and that no person other than TINA.org, AARP, their members, or their counsel contributed any money that was intended to fund the preparation and submission of this brief.

perceived benefits of the injunctive relief. At the same time, this settlement will forever bind the hands of a nationwide class from doing anything about it. *See id.* at ¶ IX. B.

> A. The Prohibited Language in the Proposed Settlement Does Not Eradicate the Deception

The proposed settlement agreement gives the false impression that defendants are making material changes to their marketing of glucosamine supplements when, in reality, the injunctive relief is illusory and only benefits defendants. Specifically, the settlement agreement prohibits defendants from using just six phrases on their packaging and marketing:

- "repair joints,"
- "repair cartilage,"
- "rebuild joints,"
- "rebuild cartilage,"
- "rejuvenate joints,"
- "rejuvenate cartilage."

*Id.* at ¶ IV. C. Not only can defendants still market their supplements as being able to build cartilage, improve joint function, and reduce joint pain – the very claims at issue in plaintiffs' complaint – but defendants can also use numerous other synonyms to get the very same misleading marketing claims across. In fact, defendants can use any verb – except for the three that were blacklisted in the agreement (repair, rebuild, rejuvenate) – that suggests the glucosamine supplements can build cartilage and/or improve joint health.[2] Put simply, defendants' agreement to stop using six phrases on their labeling is worthless, confers absolutely no benefit to the class, and, ironically, would give defendants

---

[2] For example, there is nothing that prevents defendants from using the following words: "improve," "protect," "nourish," "reconstruct," "restore," "reinvigorate," "refresh," "soothe," "revive," "alleviate," "renovate," and "rehabilitate."

4

added protection by order of a federal district court to continue to deceptively market their supplements using the very same claims that formed the basis of this lawsuit.[3]

Similar injunctive relief was flatly rejected by the Seventh Circuit in a nearly identical class-action lawsuit. *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). In that case, Judge Posner, a highly respected jurist, pointed out that because the injunctive relief only required cosmetic word edits to the labels of the glucosamine bottles, the benefits inured solely to defendants, not the consumers who were, and will continue to be, deceived:

> A larger objection to the injunction is that it's superfluous—or even adverse to consumers. Given the emphasis that class counsel place on the fraudulent character of [defendant]'s claims, [defendant] might have an incentive even without an injunction to change them. The injunction actually gives it protection by allowing it, with a judicial imprimatur (because it's part of a settlement approved by the district court), to preserve the substance of the claims by making—as we're about to see—purely cosmetic changes in wording, which [defendant] in effect is seeking judicial approval of. For the injunction seems substantively empty. In place of "support[s] renewal of cartilage" [defendant] is to substitute "contains a key building block of cartilage." We see no substantive change.

*Id.* at 785. The same criticism is appropriately levied at the proposed settlement in this case, which is to say that the injunctive relief is substantively empty. Specifically, the failure to include catch-all language in the agreement that would prohibit defendants from suggesting or implying in any manner that their supplements can rebuild joint cartilage, improve joint function, and reduce joint

/ / / / /

/ / / / /

/ / / / /

---

[3] It is also important to note that there is no evidence that these six phrases are material to consumers, the removed language is more scientifically "untrue" than the retained language, or that consumers would be more harmed by one set of language over another. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014).

5

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

11-cv-1056-MDD

pain means that changes to their labeling as a result of this settlement agreement will not affect their ability to continue with their deceptive marketing message. For this reason, the agreement is unfair to class members and should be rejected.[4]

      B.      The Injunctive Relief In The Proposed Settlement Is Only Temporary While Class Members Are Forever Banned From Suing Defendants

To make matters worse, defendants' minor labeling restrictions are only binding for two years, while class members are required to give up their litigation rights forever. *See* Settlement Agreement and General Release, at ¶ IV.C. ("[Defendant] agrees that for a period of twenty four (24) months commencing six (6) months after the Effective Date, . . . it will not make the following statements in the packaging or marketing of the Covered Products . . ."); ¶ IX. B. ("As of the Effective Date, the Releasing Persons are deemed to have fully released and forever discharged the Released Persons of and from all Released Claims by operation of entry of the Final Order and Judgment.")[5] And to add

---

[4] In November 2014, TINA.org filed an amicus curiae brief opposing the terms of a similar proposed settlement agreement in another case regarding the alleged false advertising of glucosamine supplements. *Quinn, et al. v. Walgreen, Co., et al.*, Case No. 12-cv-8187, S.D.N.Y. An attorney for AARP Foundation Litigation represented an objector in the case. *Id.* Subsequently, the parties renegotiated the settlement agreement and revised the injunctive relief (which previously banned only six words from the product labels for a two-year period) to include broader catch-all language that will prohibit the glucosamine marketers in that case from conveying the message that its supplements can repair, strengthen, or rebuild cartilage. The duration of the injunctive relief was also amended: Instead of expiring after two years, the proposed injunction now continues in perpetuity (until and unless the marketers become aware of scientific evidence to substantiate the preexisting cartilage claims and the Court allows them to reinstate the banned language). *See Quinn, et al. v. Walgreen, Co. et al.,* Case No. 12-cv-8187, S.D.N.Y., Amendment to Settlement Agreement and General Release, dated Jan. 30, 2015 (Dkt. 141-1).

[5] In addition to giving up their right to sue defendants for false marketing of the supplements at issue, class members are also waiving clear statutory rights they have under state laws, such as Section 1542 of the Civil Code of the State of California, which prohibits general releases such as this one from being extended to claims unknown at the time of executing the release, even if they would have materially affected the settlement. *See* Settlement Agreement and General Release ¶ IX.B.iii.

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

6

11-cv-1056-MDD

insult to injury, the proposed settlement agreement allows defendants to continue selling their products that are currently on the shelves in stores, regardless of the labels and regardless of how long that stockpile lasts, effectively decreasing the two-year injunction by a potentially significant amount of time. *Id.* at ¶ IV.C. iii. Allowing defendants to continue selling what is in stores and then resume use of the very labels that are at issue in this litigation in just two years, while class members are permanently prohibited from suing the companies over their false marketing of the products is patently unfair and a reversible error. *See Pearson,* 772 F.3d at 787 ("for a limited period the labels will be changed, in trivial respects unlikely to influence or inform consumers."); *see also, Vassalle v. Midland Funding LLC,* 708 F.3d 747, 756 (6th Cir. 2013) ("the injunction only lasts one year, after which [the defendant] is free to resume its predatory practices should it choose to do so.").[6]  In fact, the *Pearson* Court advocated for a perpetual injunction, stating:

> The 30-month…cutoff means that after 30 months [defendant] can restore the product claims that form the foundation of this suit.  It says it will be reluctant to do that because then fresh class actions will be brought against it.  But if so, why would it prefer a 30-month injunction to a perpetual injunction? Were the injunction perpetual, [defendant] could ask the district court to modify it should new research reveal that its allegedly false claims were true after all.

*Pearson* at 785.  In short, it is clear that the temporary relief proposed in this settlement functions merely as window dressing attempting to cover up worthless injunctive relief.  Accordingly, the proposed agreement is unfair to class members and this Court should not grant approval.

/ / / / /

/ / / / /

---

[6] While there have been district courts that have approved settlements that include such short-term injunctive relief in the past (*see, e.g., Dennis v. Kellogg Co.,* 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013), most recently, Judge Posner took the better view in *Pearson*.

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

C.  Older People Are Particularly Vulnerable
    To Deceptive Marketing Of Glucosamine

The importance of robust enforcement of laws designed to protect consumers, and in this case older consumers in particular, from deceptive marketing claims cannot be overstated.  Deceptive marketing of dietary supplements is an enormous problem that is growing opportunistically. "[M]arketing scams that prey disproportionately on seniors [for] unproven cures or treatments for various health conditions is a prime example of fraud impacting older Americans." *Deceptive Marketing Of Dietary Supplements, F.T.C. Enforcement Activities*, *before the Special Committee On Aging*, 111th Cong. (2010) (Prepared Statement of Federal Trade Commission, at 1). "Such marketing scams are particularly cruel by preying on consumers when they are most vulnerable and desperate, offering false hope and even luring them away from more effective treatments. For every serious disease, especially those with no proven cure, there are hundreds of marketers engaging in such fraud." *Id.*

The burgeoning older population is recognized as presenting particularly lucrative business opportunities. Indeed, "the marketplace has seen a steady stream of new or reformulated products purporting to help consumers get and stay healthy." *Advertising Trends And Consumer Protection, before the Subcomm. on Consumer Prot., Prod. Safety, and Insur. of the S. Comm. on Commerce, Sci., and Transp.*, 111th Cong. (2009) (Prepared Statement of the Federal Trade Commission, 2).  Dietary supplement "marketers [are] capitalizing on the aging population world over." *Global Bone and Joint Health Supplements Market to Reach $9.09 Billion by 2017, According to a New Report by Global Industry Analysts, Inc.* (Aug. 25, 2011), *available at* www.prweb.com/pdfdownload/8595554.pdf (last accessed March 11, 2015).  "With the decline in mortality rate globally resulting in increased longevity of life, medicines or dietary supplements catering to the needs of elderly population have

8

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

11-cv-1056-MDD

gained increased attention." *Global Glucosamine Market to Reach 46.6 Thousand Metric Tons by 2017, According to a New Report by Global Industry Analysts, Inc.* (August 24, 2011), *available at* www.Prweb.com/pdfdownload/8561248.pdf (last accessed March 11, 2015).

Scientific evidence establishes that glucosamine hydrochloride is no more effective than a placebo, and that the benefits of glucosamine sulfate are equivocal at best. *See Glucosamine and Chondroitin Fare No Better Than Placebo in Slowing Cartilage Loss From Knee Osteoarthritis,* U.S. Dept. of Health & Human Servs., Nat'l Institutes of Health (Oct. 2008), https://nccih.nih.gov/research/results/spotlight/051110.htm (last accessed March 11, 2015). *See also* Third Am. Compl. ¶¶ 5, 26-27. Nevertheless, "U.S. consumers spent $753 million in 2012 on supplements of glucosamine and chondroitin in an attempt to relieve pain and stiffness from arthritis." *The Facts About Joint Supplements,* Consumer Reports (Aug. 2013), *available at* http://consumerreports.org/cro/magazine/2013/10/facts-about-joint-supplements/index.htm (last accessed March 11, 2015). Often, people do not get what they pay for. *See id*. ("Of the 16 products we tested, seven didn't contain all that they claimed.").

In addition to not getting the benefit of the bargain when health-benefit claims are false, false advertising claims may harm those who may delay effective treatment, continue to suffer, and experience a further deterioration in their health in reliance on such claims. For example, people who suffer joint pain may use products that deceptively claim to offer relief rather than opt for proven and effective methods of relief, such as weight-loss and physical-activity regimens. "There is strong evidence that physical activity reduces pain, improves function and mood, and delays disability in adults with arthritis." *Spotlight Leisure Physical Activity No*

/ / / / /

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

9

11-cv-1056-MDD

*Leisure-time Physical Activity in Adults with Arthritis,* Center for Disease Control, www.cdc.gov/arthritis/resources/spotlights/leisure-pa.htm (last accessed March 11, 2015).

This heightened vulnerability and the danger that such marketing poses to older class members in particular highlights the importance of rejecting the proposed settlement agreement, which contains injunctive relief that is entirely illusory and temporary in nature, and is therefore unfair to class members.

## IV

## CONCLUSION

In sum, the proposed agreement is patently unfair to class members because it does not remedy the false marketing of the glucosamine supplements at issue, but rather shields defendants' deceptive marketing from future challenges. For these reasons, TINA.org and AARP respectfully urge this Court to reject the proposed settlement.

DATED: March 11, 2015          Respectfully submitted,

                                              MARKS, FINCH, THORNTON & BAIRD, LLP

                                              By: *s/ Andrea L. Petray*
                                                  ANDREA L. PETRAY
                                                  Email: apetray@marksfinch.com
                                            Attorneys for Truth In Advertising, Inc.

1439.004/37Z1468.nlh

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

10

11-cv-1056-MDD

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 11th day of March 2015 and is available for viewing and downloading to the ECF registered counsel of record:

<u>Via Electronic Service/ECF</u>:

Charles C. Sweedler
Howard J. Sedran
Keith J. Verrier
Levin Fishbein Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Elaine A. Ryan
Patricia N. Syverson
Lindsey Gomez-Gray
Bonnett, Fairbourn, Friedman & Balint, PC
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Eryan@bffb.com
Psyverson@bffb.com
Lgomez@bffb.com

Manfred Patrick Muecke, Jr.
Bonnett Fairbourn Friedman and Balint PC
600 West Broadway, Suite 900
San Diego, CA 92101
Mmuecke@bffb.com

Stewart Weltman
Stewart M. Weltman LLC
53 West Jackson, Suite 364
Chicago, IL 60603
Sweltman@boodlaw.com

/ / / / /

/ / / / /

Jeffrey I. Carton
Denlea and Carton LLP
One North Broadway, Suite 509
White Plains, NY 10601
Jcarton@denleacarton.com

Cecilia O'Connell Miller
Procopio Cory Hargreaves & Savitch, LLP
525 B Street, Suite 2200
San Diego, CA 92101
Cecilia.Miller@procopio.com

Howard C. Wu
Steven B. Lesan
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA 92130
Howard.Wu@lw.com
Steven.Lesan@lw.com

Mark S. Mester
Kathleen P. Lally
Latham and Watkins LLP
330 North Wabash, Suite 2800
Chicago, IL 60611
Mark.Mester@lw.com
Kathleen.Lally@lw.com

Timothy B. Hardwicke
Kathryn George
Latham & Watkins LLP
233 South Wacker Drive, Suite 5800
Chicago, IL 60606
Tim.Hardwicke@lw.com

/ / / / /

/ / / / /

/ / / / /

/ / / / /

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

Elissa M. McClure
Latham & Watkins LLP
600 West Broadway, Suite 1800
San Diego, CA 92101
Elissa.Mcclure@lw.com

DATED: March 11, 2015    Respectfully submitted,

                                                MARKS, FINCH, THORNTON & BAIRD, LLP


                                                By: *s/ Andrea L. Petray*
                                                    ANDREA L. PETRAY
                                                    Email: apetray@marksfinch.com
                                      Attorneys for Truth In Advertising, Inc.

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

3

11-cv-1056-MDD