Charles M. Thompson, *Pro Se*
1401 Doug Baker Blvd.
Suite 107-135
Birmingham, AL 35242
Tel 205-995-0068
Fax 205-995-0078
cmtlaw@aol.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LERMA, an Individual and NICK PEARSON, an Individual, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation and SCHIFF NUTRITION GROUP, INC., a Utah Corporation,<br><br>Defendants. | CASE NO. 11cv1056-mdd<br><br>OBJECTION OF CHARLES M. THOMPSON |

**COMES** Charles M. Thompson, *pro se*, having appropriately filed his claim as a class member in this case, and does file this his Objection to the subject Settlement and allege in support thereof as follows:

## INTRODUCTION

1. <u>Roll of Objectors in Modern Day Class Settlements</u> -- Of course, it is the court's determination to decide what is fair, adequate and reasonable in this case. The U.S. Supreme Court has given trial courts narrow discretion in interpreting Rule 23, *Fed. R. Civ. P.* The bar began to be raised in *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 102 Sup. Ct. 1264, 72 L. Ed. 2d 740 (1982) which held that a class action may only be approved once

the trial court is satisfied, after a *rigorous analysis,* that the prerequisites of Rule 23(a) have been satisfied. *Id.* At 161. (Emphasis added).

2. And in order for the Trial Court to conduct a rigorous analysis, the United States Supreme Court has made it clear that due process requires adequate representation of the interests of absentee class members whom the Judge will bind. *Hansberry v. Lee*, 311 U.S. 32, 42-43, 61 S. Ct. 115, 118-19, 85 L. Ed. 22 (1940). This is textbook law. Not every lawyer who has a license can provide "adequate representation." Only a miniscule percentage of lawyers understands class action proceedings.

3. To that end, only a handful of lawyers understand the actual overriding motives of many attorneys who arrive at a class action settlement. During the last decade, legal scholars have expressed growing concern about the conflicts that may arise between the class and its counsel: "These attorneys are not subject to monitoring by their putative clients, they operate largely according to their own self-interests, subject only to whatever constraints might be imposed by bar discipline, judicial oversight, and their own sense of ethics and fiduciary responsibilities." Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation*, 50 U.CHI.L.REV. 1, 7-8 n. 4 (1991); see also John C. Coffee, Jr., *Rethinking the Class Action*, 62 IND.L.J. 625, 628-29 (1987) (listing several factors that have contributed to "entrepreneurial" class action litigation, including the relatively low cost of filing dubious class action suits, the large amounts that Defendants are willing to pay in settling these suits and the incentive for class counsel to invest little time or effort in protecting the absent class members); John C. Coffee, Jr., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U.CHI.L.REV. 877, 878, 878-79 (1987) (outlining proposed rule changes that would "manipulate the incentives that the law holds out so as to motivate" class counsel to represent the absent class members as they would any other client).

Kenneth W. Dam, *Class Actions: Efficiency, Compensation, Deterrence, and Conflict of Interest*, 4 J.LEGALSTUD. 47, 61 (1975) (coining the phrase "lawyer-entrepreneur" in reference to class counsel).

Judge Posner has noted:

> [T]he absence of a real client impairs the incentive of the lawyer for the class to press the suit to a successful conclusion. His earnings from the suit are determined by the legal fee he receives rather than the size of the judgment. No one has an economic stake in the size of the judgment except the defendant, who has an interest in minimizing it. The lawyers for the class will be tempted to offer to settle with defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial. Although the judge must approve the settlement, the lawyers largely control his access to the information about the merits of the claim, the amount of work done by the lawyer for the class, the likely damages if the case goes to trial, etc. – that is vital to determining the reasonableness of the settlement.

Richard A. Posner, *An Economic Analysis of Law*, at 570 (4th ed. 1992).

4. In simplest terms, the critical role of the Court, joined by objectors, with regard to Rule 23 is to act as guardian for absent class members in assuring that the settlement is fair, adequate and reasonable. If in fact the settlement is fair, adequate and reasonable in all aspects, the Court, the Defendant and class counsel should welcome the presence of class members who did not participate in the discovery and settlement procedure in their role of further assuring that the settlement meets the criteria of Rule 23.

5. Typically, however, class counsel and the Defendant do everything possible to minimize the role of any would-be objector. Class counsel and Defendant's counsel must be aware that most individuals in a class settlement cannot afford and will not go to the effort to seek legal counsel even if they are greatly dissatisfied with the proposed settlement. Through closed-door manipulations, the settling attorneys might try sometimes essentially to control the settlement

hearing.

## A. THE PROOF REQUIREMENT TO MAKE A CLAIM IS INHERENTLY UNFAIR AND UNREASONABLE

6. The settlement provides for two separate settlement classes (i) those who save drug store receipts and (ii) those who do not. Those few class members who save itemized receipts are entitled to a larger payment, if they saved their receipts and/or their used bottles. This requirement is inherently unfair to both classes. One California court noted the unreasonableness of this requirement: "Consumers are not likely to retain records of small purchases for long periods of time." *State of California v. Levi Strauss & Co.*, 41 Cal.3d 460, 472 (1986).

## B. THE ATTORNEYS' FEES APPEAR UNREASONABLE

7. Attorneys' fees must reflect the actual value recouped by the class members. *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, MDL-1139, 2004 WL 1724980, at 13 (S.D.N.Y. July 30, 2004). When the process for awarding attorneys' fees is non-adversarial, courts must be particularly diligent in comparing the value of the settlement with the fee award. *See, Weinberger v. Great N. Mekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991).

The settlement amount is woefully inadequate! Despite the class being notified that this proposed settlement is $6.51 million, there is actually only a $2 million fund. (See pg. 4, ¶1, line 2, Order of Preliminary Approval of Class Settlement). Of the $6.51 million, the putative attorneys for the class are applying for attorneys' fees of $2,148,300. (See pg. 4, line 6, Plaintiffs' Notice of Motion and Motion for Final Approval of Settlement, Attorneys' Fees and Expenses and Service Awards, "Motion for Final Approval"). Additionally, conditional class counsel is asking the Court to award them an astronomical amount in expenses totaling $1.5 million. (See pg. 9, Section III, Plaintiffs' Motion for Final Approval, ¶ E, lines 20-21). That means that conditional class counsel expects the Court to award to them, out of the settlement fund, a total of $3,648,300. Thus, while most class members who file claims will get a grand total of $3 per

bottle of Schiff products and $10 per bottle if proof is extraordinarily furnished, conditional class counsel desires the Court to award them $3,648,300. Hence, conditional class counsel expects the Court to approve a grand total of 56% of the total settlement amount in attorneys' fees and expenses. This is a preposterous settlement! Obviously, based on the lengths that conditional class counsel have gone to in order to show the Court how experienced and deserving they might be, they have actually spent all of their multitude of hours getting a paltry class fund. One supposes that Schiff out bargained conditional class attorneys.

Furthermore, conditional class counsel goes to great lengths in their fee application to show the Court that there has been arm's length negotiations and no collusion in the subject negotiations. Said counsel states that there is not a hint of a "clear sailing" agreement. The record shows just the opposite. (See Section II, line 20, <u>Order of Preliminary Approval of Class Settlement</u>). The "clear sailing" agreement in this proposed settlement lays the groundwork for these lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees". *Weinberger v. Great Northern Nekoosa Court*, 925 F.2d 518, at 524 (1st Cir. 1991); Accord *In re: Bluetooth Headset Products Liability Litigation* 654 F.3d 935, at 948 (9th Cir. 2011).

### C. SECRET FILINGS

8. Despite abundant law requiring openness for class members, class counsel has seen fit to secrete an abundance of their filings in their <u>Plaintiffs' Notice of Motion and Motion for Final Approval of Settlement, Attorneys' Fees and Expenses and Service Awards</u>. As an example, much of said multi-faceted Motion has been redacted; plus, a number of exhibits attached to said Motion have been placed under seal. How can class members expect to have full disclosure of the settlement when conditional class counsel has not been forthcoming with their proposed clients/class members? (See Exhibits 3, 4, 7 and 8 of <u>Plaintiffs' Motion for Final Approval</u>).

### D. JOINDER IN OTHER OBJECTIONS

9. This Objector adopts all other bona fide objections filed by other class members in this case and incorporates them by reference as if they appeared in full herein.

### E. CONCLUSION

10. For the foregoing reasons and all others presented at oral arguments, this Objector respectfully requests that the Court sustain his objection and grant the following relief:

    A. Upon proper hearing, enter such Orders as are necessary and just to adjudicate this Objection and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

(Note: I am a member of the Settlement Class, and I purchased a Covered Product. This class member, Charles M. Thompson, expects to appear at the settlement hearing in subject case and present his objections to this proposed settlement. Mr. Thompson expects to take no more than 15 minutes in addressing same.)

Dated: September 24, 2015

*/s/ Charles M. Thompson*

Charles M. Thompson
1401 Doug Baker Blvd.
Suite 107-135
Birmingham, AL 35242
Tel (205) 995-0068

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2015, I mailed this document to:

U.S. District Court for the
Southern District of California
Attn: Clerk of the Court
880 Front Street
#4290
San Diego, California 92101

Elaine A. Ryan
BONNETT, FAIRBOURN,
FRIEFMAN & BALINT, P.C.
2325 East Camelback Road
Suite 300
Phoenix, Arizona 85016

Mark S. Mester
Kathleen P. Lally
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611

_____
Charles M. Thompson



**USPS FIRST CLASS MAIL®**

$7.67 US POSTAGE
3 OZ FIRST-CLASS FLATS RATE
FROM 35242
09/24/2015

CHARLES M. THOMPSON P.C.
1401 DOUG BAKER BLVD. STE 107-135
BIRMINGHAM AL 35242

C037

**SHIP TO:** U.S. District Court for the
Southern District of California
Attn: Clerk of the Court
880 Front Street Ste 4290
San Diego CA 92101-8929

**USPS CERTIFIED MAIL™**

9414 7118 9956 3870 2173 72

CERTIFIED MAIL
7013 1710 0000 1280 8823
Return Receipt Requested

SEP 28 2015
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE