LATHAM & WATKINS LLP
Mark S. Mester (*Admitted Pro Hac Vice*)
    mark.mester@lw.com
Kathleen P. Lally (*Admitted Pro Hac Vice*)
    kathleen.lally@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

LATHAM & WATKINS LLP
Steven Lesan (Bar No. 294786)
    steven.lesan@lw.com
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Attorneys for Defendants
SCHIFF NUTRITION INTERNATIONAL,
INC. and SCHIFF NUTRITION GROUP, INC.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LERMA, an Individual, and NICK PEARSON, an Individual, On Behalf of Themselves and All Others Similarly Situated, | CASE NO. 3:11-cv-01056-MDD |
| Plaintiffs, | CLASS ACTION |
| v. | **DEFENDANTS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT** |
| SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation, and SCHIFF NUTRITION GROUP, INC., a Utah Corporation, | |
| Defendants. | |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................... 1

II.   DISCUSSION ........................................................................... 1

    A.    Ms. Hammack's Objection To The Monetary Relief In The Settlement Is Primarily Based Upon A Misstatement Of The Standard For Evaluating Whether The Settlement Is Fair, Reasonable And Adequate ................................. 2

        1.    Ms. Hammack's Objection Is Based On An Incorrect Standard ................................................. 2

        2.    The Merits Of Plaintiffs' Claims And The Complexity And Expense Of Litigation Balanced Against The Terms Of The Settlement Fully Demonstrate That The Settlement Is Fair, Reasonable And Adequate ................................... 3

        3.    Settlement Class Members Who Filed A Claim Are Likely To Be <u>Fully</u> Compensated (Or More) For Their Purchases ................................................ 6

    B.    The Objections Of Ms. Hammack And TINA And AARP To The Proposed Injunction Both Misrepresent The Injunction As Well As The Law ................................ 9

        1.    Schiff May Not Lift The Injunction At Any Time By Simply Petitioning The Court ............................ 9

        2.    TINA And AARP Misconstrue The Seventh Circuit's Decision In <u>Pearson</u> ............................ 10

        3.    TINA And AARP's Contention That The Court Should Consider The Injunctive Relief In Isolation To The Remainder Of The Settlement Is Based Upon An Incorrect Standard Of Law .......................... 11

    C.    Ms. Hammack's Objection To The Claims Process Is Based Upon A Misunderstanding Of That Process ........................ 12

III.  CONCLUSION ......................................................................... 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

## <u>TABLE OF AUTHORITIES</u>

### CASES

Page(s)

<u>Aboudi v. T-Mobile</u>,
2015 WL 4923602 (S.D. Cal. 2015) ...................................................................... 3

<u>Amchem v. Windsor</u>,
521 U.S. 591 (1997) .............................................................................................. 5

<u>Amerisure v. Orange & Blue</u>,
545 F. App'x 851 (11th Cir. 2013) ....................................................................... 2

<u>California v. Levi</u>,
41 Cal. 3d 460 (1986) ........................................................................................... 8

<u>Davis-Miller v. Automobile Club of Southern California</u>,
201 Cal. App. 4th 106 (2d Dist. 2011) ................................................................. 5

<u>Dennis v. Kellogg</u>,
2013 WL 6055326 (S.D. Cal. 2013) ..................................................................... 2

<u>Fraker v. Bayer</u>,
2009 U.S. Dist. LEXIS 125633 (E.D. Cal. 2009) ................................................ 4

<u>Freeman v. Time</u>,
68 F.3d 285 (9th Cir. 1995) ................................................................................ 10

<u>Haskell v. Time</u>,
965 F. Supp. 1398 (E.D. Cal. 1997) ..................................................................... 4

<u>In re DJ Orthopedics</u>,
2004 WL 1445101 (S.D. Cal. 2004) ..................................................................... 5

<u>In re Lawnmower Engine Horsepower</u>,
733 F. Supp. 2d 997 (E.D. Wis. 2010) ................................................................. 8

<u>In re Mego</u>,
213 F.3d 454 (9th Cir. 2000) ....................................................................... 3, 5, 7

<u>Lane v. Facebook</u>,
696 F.3d 811 (9th Cir. 2012) ......................................................................... 2, 11

<u>Linney v. Cellular Alaska</u>,
151 F.3d 1234 (9th Cir. 1998) .............................................................................. 7

<u>n re Nutella</u>,
589 F. App'x 53 (3d Cir. 2014) ............................................................................ 2

<u>National Council Against Health Fraud v. King Bio</u>,
107 Cal. App. 4th 1336 (2d Dist. 2003) ............................................................... 4

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
CHICAGO

ii

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

|  |  | Page(s) |
|---|---|---|
| Pearson v. NBTY, | | |
| 2014 WL 30676 (N.D. Ill. 2014) | | 4, 5, 11 |
| Pearson v. NBTY, | | |
| 772 F.3d 778 (7th Cir. 2014) | | 4, 10 |
| Rodriguez v. West Publishing, | | |
| 563 F.3d 948 (9th Cir. 2009) | | 7 |
| Thorogood v. Sears, Roebuck and Co., | | |
| 547 F.3d 742 (7th Cir. 2008) | | 5 |
| Wang v. OCZ Tech. Group, | | |
| 276 F.R.D. 618 (N.D. Cal. 2011) | | 11, 12 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Defendants Schiff Nutrition International, Inc. and Schiff Nutrition Group, Inc. (collectively, "Schiff") submit the following memorandum in response to the objections filed by Truth in Advertising, Inc. ("TINA") and the American Association of Retired Persons ("AARP"), Ashley Hammack, Joan Smallwood and Charles Thompson.

## I.    INTRODUCTION

Schiff understands that Class Counsel are responding in detail to the objections lodged to the proposed Settlement. As such, Schiff does not wish to burden the Court with duplicative briefing. There are certain matters, however, that Schiff believes warrant a separate response, and Schiff responds below to those portions of the few objections that have been lodged.

As detailed below, the objections made are largely based on incorrect standards, a misunderstanding of the proposed Settlement and very little analysis beyond conclusory statements. When the appropriate standards are applied to the actual facts of this case, however, it becomes clear that the proposed Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class. Indeed, the three members of the Settlement Class who filed objections represent a miniscule portion of the Settlement Class as a whole, and the fact that there is an exceedingly low rate of objections and opt-outs coupled with the fact that none of the objectors who opposed the Pearson settlement have filed objections only further confirm the fairness, reasonableness and adequacy of the Settlement.[1]

## II.    DISCUSSION

For the reasons discussed herein as well as those set forth in the submission by Plaintiffs, Schiff respectfully requests that the objections to Final Approval of the Settlement be overruled and that the Court enter an order granting final

---

[1]   Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Second Amended Settlement Agreement. See Second Am. Settlement Agmt. (Dkt. #141-2). In addition, unless stated otherwise, all emphasis is supplied and all internal citations and quotations are omitted from any quoted material.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

approval of the Second Amended Settlement Agreement.  <u>See</u> disc. <u>infra</u> at 2-13.

**A.    Ms. Hammack's Objection To The Monetary Relief In The Settlement Is Primarily Based Upon A Misstatement Of The Standard For Evaluating Whether The Settlement Is Fair, Reasonable And Adequate**

Ms. Hammack contends, without any analysis or citation to authority, that the Settlement is "unfair, unreasonable, and inadequate," because it does not "disgorge [Schiff] of its ill-gotten profits."  Hammack Objection (Dkt. #159) at 2. Ms. Hammack's objection, however, misses the mark on several fronts.  <u>See</u> disc. <u>infra</u> at 2-8.[2]

**1.    Ms. Hammack's Objection Is Based On An Incorrect Standard**

Ms. Hammack's argument is essentially based on an incorrect standard.  <u>See</u> Hammack Objection (Dkt. #159) at 2.  In evaluating whether a settlement is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e), a court is not reaching "any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, nor is" it judging the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators."  <u>Dennis v. Kellogg</u>, 2013 WL 6055326, at *2 (S.D. Cal. 2013); <u>see also</u> <u>Lane v. Facebook</u>, 696 F.3d 811, 819 (9th Cir. 2012) ("[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.").  Instead, courts addressing the issue of final approval are to consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

---

[2]    Ms. Hammack also contends that the Settlement is not fair, reasonable or adequate, because part of the Settlement may be paid for by an insurance policy. <u>See</u> Hammack Objection (Dkt. #159) at 2.  Tellingly, Ms. Hammack cites no authority for this proposition.  <u>See id.</u>  <u>But see</u> <u>In re Nutella</u>, 589 F. App'x 53, 56 (3d Cir. 2014) (affirming approval of settlement in which certain amounts would be paid by an insurer).  Indeed, "the sole purpose of commercial general liability insurance is to provide coverage for injuries that occur to the public-at-large." <u>Amerisure v. Orange & Blue</u>, 545 F. App'x 851, 855 (11th Cir. 2013).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Aboudi v. T-Mobile, 2015 WL 4923602, at *4 (S.D. Cal. 2015).

The submission by Ms. Hammack, however, contains <u>no</u> discussion of the merits of Plaintiffs' claims and <u>no</u> discussion of the complexity and expense of litigation. See Hammack Objection (Dkt. #159) at <u>passim</u>. Instead, Ms. Hammack merely states in a conclusory fashion that any settlement that does not disgorge Schiff of all profits supposedly must be inadequate. See <u>id.</u> at 2. As discussed below, however, when the merits of Plaintiffs' claims, the complexity and expense of litigation and the relief that Settlement Class Members are expected to receive are all considered, there is no doubt that the Settlement is fair, reasonable and adequate within the meaning of governing law. See disc. <u>infra</u> at 3-8.[3]

**2. The Merits Of Plaintiffs' Claims And The Complexity And Expense Of Litigation Balanced Against The Terms Of The Settlement Fully Demonstrate That The Settlement Is Fair, Reasonable And Adequate**

The monetary relief offered in the proposed Settlement is more than reasonable in light of the difficulty that Plaintiffs and members of the Settlement Class would otherwise have in maintaining their claims. See, e.g., In re Mego, 213 F.3d 454, 459 (9th Cir. 2000) (noting that the amount offered in settlement should be considered in light of the strength of the plaintiff's case). To begin with, Plaintiffs' substantive claims suffer from material weaknesses that undermine their ability to recover. See disc. <u>infra</u> at 3-6. Indeed, in a similar case pending in the Northern District of Illinois (<u>i.e.</u>, <u>Pearson v. NBTY</u>), Judge James B. Zagel noted

---

[3] Ms. Smallwood similarly fails to consider any of these issues in her objection, which essentially amounts to a belief that she is owed more because one of the Covered Products has purportedly caused her to incur medical expenses. See Smallwood Objection (Dkt. #161). Ms. Smallwood, however, provides no information or explanation whatsoever to support her otherwise bald assertion. See <u>id.</u> Because Ms. Smallwood's concern appears to be <u>sui generis</u>, Schiff would be willing to allow her to belatedly opt-out of the Settlement Class in order to allow her to preserve whatever claims she may believe she has (if any).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

that there were "non-trivial potential obstacles to Plaintiffs' prevailing on the merits." Pearson v. NBTY, 2014 WL 30676, at *3 (N.D. Ill. 2014).[4]

For example, Plaintiffs have essentially brought false advertising claims, and as such, they would have the burden of proving that Schiff made false or misleading statements. See, e.g., National Council Against Health Fraud v. King Bio, 107 Cal. App. 4th 1336, 1344 (2d Dist. 2003) ("When they bring [false advertising claims], both private persons and prosecuting authorities bear the burden of proving the advertising claims to be false or misleading."); Third Am. Compl. (Dkt. #33-1) at ¶¶ 51-69. Plaintiffs, however, could not simply rely upon allegations that Schiff did not have sufficient support for its statements, as Plaintiffs would actually have to prove the statements were false. See, e.g., Fraker v. Bayer, 2009 U.S. Dist. LEXIS 125633, at *22-23 (E.D. Cal. 2009) ("If Plaintiff is going to maintain an action against Defendant for false or misleading advertising, then Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence."). Given that Schiff has produced considerable evidence supporting its representations, however, and both sides have produced significant expert analysis and testimony discussing the strengths and limitations of the studies on which both sides rely, Plaintiffs would most certainly face an uphill battle on this front. See, e.g., Haskell v. Time, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) ("Furthermore, anecdotal evidence alone is insufficient to prove that the public is likely to be misled. . . . to prevail, plaintiff must demonstrate by extrinsic evidence, such as

---

[4]    As this Court is aware, the Seventh Circuit reversed Judge Zagel's order of final approval in Pearson, primarily taking issue with the award of attorneys' fees and costs relative to what the class had recovered. See Pearson v. NBTY, 772 F.3d 778, 780-85 (7th Cir. 2014). Notably, however, the Seventh Circuit did not disrupt the district court's ruling that the compensation offered to the class was otherwise fair, reasonable and adequate. See id. at passim. Nor did the Seventh Circuit disagree with Judge Zagel's conclusion that the class would face "non-trivial" obstacles in actually recovering on their claims. See id.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

consumer survey evidence, that the challenged statements tend to mislead consumers.").

Moreover, Plaintiffs would have great difficulty obtaining and maintaining class certification for the purposes of trial, as this case would raise significant manageability concerns if it were tried on a class basis. See Amchem v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). By way of example, individual members of the Settlement Class would each have to demonstrate that they viewed and relied upon Schiff's marketing statements as opposed to anecdotal evidence from friends or recommendations from their doctors, among other things. See, e.g., Davis-Miller v. Automobile Club of Southern California, 201 Cal. App. 4th 106, 117 (2d Dist. 2011) (individual hearings would be required to determine whether any allegedly false advertising was material to class members' purchasing decisions); Thorogood v. Sears, 547 F.3d 742, 747 (7th Cir. 2008) (trial in a consumer fraud case alleging that defendant falsely advertised its dryers as having a "stainless steel drum" would require individual hearings to determine, among other things, whether that statement had an effect on the consumers' decision to purchase the dryer).

Last but not least, litigation of this matter would be expensive, risky and complicated, weighing in favor of settlement. See, e.g., Pearson, 2014 WL 30676, at *3; In re Mego, 213 F.3d at 459. Absent settlement, there would likely be several years of litigation, including class certification briefing, trial and multiple appeals, and the outcome for Plaintiffs and the Settlement Class is by no means certain. See disc. supra at 3-5. In such circumstances, however, settlement is favored. See, e.g., In re DJ Orthopedics, 2004 WL 1445101, at *3 (S.D. Cal. 2004) ("The court agrees with Plaintiffs' assessment of the risks posed by trying the instant action, namely that even though the case may have survived, in part, a

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

motion to dismiss, there are substantial risks to recovery, and settlement may be a more favorable path because the ultimate results of continued litigation are both uncertain and costly.”).

### 3. Settlement Class Members Who Filed A Claim Are Likely To Be Fully Compensated (Or More) For Their Purchases

Based upon a preliminary accounting of the Settlement Fund, it appears that there will be over $3,290,000 available to distribute to those members of the Settlement Class who file claims for reimbursement.[5] See Declaration of Eric Robin (“Robin Decl.”), Ex. A, at ¶¶ 21, 23; disc. infra at 6-8.[6] As of the date of this filing, approximately 40,167 claim forms have been filed, representing approximately $431,583 of the Settlement Fund. See Robin Decl., Ex. A, at ¶ 21. Because the total of the Cash Awards does not exceed the amount available in the Settlement Fund to pay claims, however, Settlement Class Members who submitted claims with Adequate Proof of Purchase will receive increased awards triple of what they were otherwise entitled, and Settlement Class Members who submitted claims without proof of purchase will receive increased awards double of what they were otherwise entitled. See Second Am. Settlement Agmt. (Dkt. #141-2) at § IV, ¶ D(i). In other words, Settlement Class Members who filed claims with Adequate Proof of Purchase will receive $30 per Covered Product and those without Adequate Proof of Purchase will receive $6 per Covered Product. See id. And even after these increased awards, approximately $2,000,000 will remain in the Settlement Fund, which amount will be distributed to the Settlement

---

[5] This accounting assumes that the Court awards Class Counsel the full amount of Attorneys’ Fees and Costs that they have requested, that notice and administration is approximately $920,000, that no additional Valid Claims come to the Parties’ attention and that all claims that were filed before the Claim Deadline are Valid Claims. See Robin Decl., Ex. A, at ¶¶ 21, 23.

[6] Because Class Counsel is submitting the Declaration of Eric Robins, with all exhibits thereto, as an attachment to Plaintiffs’ response to the objections to Final Approval of the Settlement, the Robins Declaration attached as Exhibit A hereto is being submitted without exhibits.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

6

Case No. 3:11-cv-01056-MDD
Defs.’ Response to Objections to
Final Approval of Settlement

Class Members who filed valid claims <u>pro rata</u>, increasing the award for each Covered Product by approximately $16.  <u>See id.</u>  As such, each Settlement Class Member who filed a Valid Claim that included Adequate Proof of Purchase will receive approximately $46 per Covered Product, and those that filed a claim without such proof will receive approximately $22 per Covered Product.  <u>See</u> disc. <u>supra</u> at 6-7.

   As detailed by Schiff in a prior submission, the price of the Covered Products can vary from as little as $9.95 to as much as $32.99 with the majority of the products retailing for $20.00 or less.  <u>See</u> Defs.' Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #108) at 4 & Ex. A.  Thus, Settlement Class Members who submitted Valid Claims with Adequate Proof of Purchase will be <u>more than</u> <u>fully compensated</u> for their purchases.  <u>See id.</u>; disc. <u>supra</u> at 6-7.  Indeed, members of the Settlement Class will in some cases receive more than <u>double</u> their original purchase price.  <u>See</u>, <u>e.g.</u>, Smallwood Objection (Dkt. # 161) (attaching proof of purchase for Move Free Triple at a cost of $18.39).  And most Settlement Class Members who submitted claims without Adequate Proof of Purchase are likely to receive <u>full</u> compensation.  <u>See</u> Defs.' Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #108) at 4 & Ex. A at 6, 8, 11-13 (showing several products with purchase prices of $15.00 and under).

   Given that Settlement Class Members who filed Valid Claims are very likely to be fully compensated under the Settlement, there can be no legitimate dispute that the Settlement provides fair, reasonable and adequate compensation to Settlement Class Members.  <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. West Publishing</u>, 563 F.3d 948, 964 (9th Cir. 2009) (district court did not abuse its discretion in approving settlement fund that was between 15% and 30% of the class's potential recovery); <u>In re Mego</u>, 213 F.3d at 459 (affirming approval of a settlement where the amount was one-sixth of the potential recovery); <u>Linney v. Cellular Alaska</u>, 151 F.3d 1234, 1242 (9th Cir. 1998) (affirming approval of a settlement that would compensate the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

class for only a percentage of their claimed damages). Moreover, and despite the claims of TINA and AARP, it is clear that the Settlement set forth in the Second Amended Settlement Agreement has not reduced the amount made available to the Settlement Class but, instead, has increased that amount. Compare disc. supra at 6-7, with Supplemental Brief (Dkt. #144) at 3 (contending that the Second Amended Settlement Agreement reduced the amount made available to the Settlement Class) and Settlement Agmt. Redline (Dkt. #141-1) at p.14 (noting that the Amended Settlement Agreement only guaranteed $2,000,000 payment to the Settlement Class).

Because Ms. Hammack's objection fails to consider the merits of Plaintiffs' claims, the complexity and expense of litigation and the relief that Settlement Class Members are expected to receive, her objection should likewise be overruled. See disc. supra at 2-8.[7]

---

[7] Mr. Thompson contends that allowing Settlement Class Members who are able to submit Adequate Proof of Purchase to claim-in for a higher amount than those Settlement Class Members who are unable to submit such proof is "unfair to both classes." See Thompson Objection (Dkt. #161) at 4. Notably, however, the only support that Mr. Thompson cites for his argument (i.e., California v. Levi, 41 Cal. 3d 460 (1986)), does not actually stand for the proposition that asking consumer to provide proof of purchase is "unreasonable." See id. Instead, that decision (which is applying a different legal standard for final approval and is obviously not binding on this Court) discusses the various ways in which residual funds may be distributed and merely notes that distributing funds in class actions can be difficult:

> Damage distribution . . . poses special problems in consumer class actions. Often, proof of individual damages by competent evidence is not feasible. Each individual's recovery may be too small to make traditional methods of proof worthwhile. In addition, consumers are not likely to retain records of small purchases for long periods of time.

Levi, 41 Cal. 3d at 471-72. Nowhere in Levi, however, does the California Supreme Court suggest that it is unreasonable to allow those who actually have retained such proof to be compensated at a higher rate than those who have not. See id. at passim. And capping the amount that those without adequate proof of purchase may claim is important to deterring fraudulent claims, as this Court noted at the July 10, 2014 hearing. See, e.g., In re Lawnmower Engine Horsepower, 733 F. Supp. 2d 997, 1010 (E.D. Wis. 2010) (noting that it was important for the settlement to have a mechanism to protect against potential fraudulent claims).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

**B. The Objections Of Ms. Hammack And TINA And AARP To The Proposed Injunction Both Misrepresent The Injunction As Well As The Law**

Plaintiffs and their counsel have addressed at length the proposed injunction included in the Settlement. See, e.g., Pls.' Mem. in Supp. of Mot. for Final Approval (Dkt. #153-1) at 14-20; Pls.' Supp. Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #107) at 4-13; Pls.' Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #81-1) at 5-6, 20. Accordingly, Schiff does not wish to burden the Court with duplicative briefing and instead will simply address certain inaccuracies in the objections of Ms. Hammack and TINA and AARP regarding the injunction as well as governing law.[8] See disc. infra at 9-12.

**1. Schiff May Not Lift The Injunction At Any Time By Simply Petitioning The Court**

Ms. Hammack contends that the injunction is "illusory," because Schiff supposedly "can resume its past deceptive practices at any time by petitioning the court." Hammack Objection (Dkt. #159) at 2. This, however, is simply not correct.

---

[8] On or about March 11, 2015, TINA and AARP sought and were granted permission to file an amicus brief in opposition to the previously-proposed First Amended Settlement Agreement. See Brief of Amici Curiae (Dkt. #136); Order Granting Mot. for Leave to File Amicus Brief (Dkt. #135). Subsequently, the Parties amended the settlement agreement and sought preliminary approval of the Second Amended Settlement Agreement. See Joint Motion Seeking Approval of Mod. to Amended Settlement Agreement (Dkt. #141). After a hearing on May 15, 2015, the Court granted preliminary approval of the Second Amended Settlement Agreement. See Order re: Joint Mot. for Approval of Mod. to Amended Settlement Agreement (Dkt. #147). Prior to the May 15, 2015 hearing, TINA and AARP filed a supplemental brief purporting to object to final approval. See Supplemental Brief (Dkt. #144). The Court, however, deemed their objection premature, as the Settlement had not yet received preliminary approval. See May 15, 2015 Hr'g Tr. (Dkt. #163) at 3. TINA and AARP, however, did not file any objection to Plaintiffs' request for final approval of the Second Amended Settlement Agreement or seek leave to appear at the hearing. Accordingly, it is unclear whether the objection has been withdrawn. In any event, however, the objection by TINA and AARP (neither of which are members of the Settlement Class) is largely duplicative of other objections, and therefore, we believe that any objection they may have had has been amply addressed in the Parties' briefing. See Supplemental Brief (Dkt. #144); Pls.' Response to Objection at passim; disc. supra at 2-8 (discussing the monetary relief to the class); disc. infra at 9-12 (discussing the injunction). Nevertheless, we briefly address below issues previously raised by TINA and AARP out of an abundance of caution. See disc. infra at 9-12.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Schiff may only request a lifting of the injunction if it becomes aware of "an independent, well-conducted, published clinical trial substantiating" the challenged statements.  See Second Am. Settlement Agmt. (Dkt. #141-2) at § IV, ¶ E(iv).  In other words, the injunction may only be lifted if Class Counsel and/or the Court agree that the referenced statements are supported by science and therefore not "deceptive."  See disc. supra at 9-10; Freeman v. Time, 68 F.3d 285, 289-90 (9th Cir. 1995) (holding consumers have an obligation to review packaging as a whole and rejecting the argument that "reasonable" consumers can selectively review challenged advertising and ignore additional relevant information).

### 2. TINA And AARP Misconstrue The Seventh Circuit's Decision In Pearson

TINA and AARP contend that the Seventh Circuit previously rejected an injunction similar to the one at issue in this Settlement.  See Brief of Amici Curiae (Dkt. #136) at 5; see also Pearson, 772 F.3d at 785.  The Seventh Circuit did not, however, reject the settlement in Pearson because of the injunction.  See Brief of Amici Curiae (Dkt. #136) at 5; see also Pearson, 772 F.3d at passim.

Instead, in reversing Judge Zagel's order of final approval, the Seventh Circuit primarily took issue with the award of attorneys' fees and costs relative to what the class had recovered.  See Pearson, 772 F.3d at 780-85.  More specifically, the Seventh Circuit held in Pearson that when awarding fees in a class settlement, courts in the Seventh Circuit should consider "the ratio of (1) the fee to (2) the fee plus what the class members received," not simply what is made available to the class.  See id. at 781, 783.  Indeed, the Seventh Circuit held that Judge Zagel was correct in excluding the injunctive relief and cy pres award from that ratio, affirming Judge Zagel's ruling that the injunction could not be valued.  See id. at 781.  Because the injunction was not valued as part of the settlement in the first instance, the Seventh Circuit could not and did not "reject" it.  See id. at 780-85.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

### 3. TINA And AARP's Contention That The Court Should Consider The Injunctive Relief In Isolation To The Remainder Of The Settlement Is Based Upon An Incorrect Standard Of Law

TINA and AARP contend that "the entire settlement should be rejected because the injunctive relief is inadequate." See Supplemental Brief (Dkt. #144) at 3 n.1. Governing law in the Ninth Circuit, however, holds that in evaluating whether a settlement is fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e), the Court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components." Lane, 696 F.3d at 818-19. As such, the injunctive relief must be considered in conjunction with the monetary relief offered to the Settlement Class. See id. Moreover, both of those components must be considered in light of factors such as the strength of Plaintiffs' case and the risk and expense of further litigation, as discussed above. See id. at 819; disc. supra at 2-8.

TINA and AARP's objection, however, considers none of these issues. See Brief of Amici Curiae (Dkt. #136) at passim; Supplemental Brief (Dkt. #144) at passim. But as discussed above, there are "non-trivial potential obstacles to Plaintiffs' prevailing on the merits." Pearson, 2014 WL 30676, at *3; disc. supra at 3-6. In fact, this is all the more true when considering Plaintiffs' request for injunctive relief. See Third Am. Compl. (Dkt. #33-1) at Prayer for Relief. "[A] plaintiff seeking equitable relief must . . . demonstrate a likelihood of future injury. This requires a showing that plaintiff is realistically threatened by a repetition of the violation." Wang v. OCZ Tech. Group, 276 F.R.D. 618, 626 (N.D. Cal. 2011) (emphasis in original).

Plaintiffs and members of the Settlement Class who did not receive any benefits from the Covered Products, however, are highly unlikely to continue to purchase those products and therefore would be unable to demonstrate a threat of future injury. See, e.g., Defs.' Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #108) at Ex. B at 1-3 (reviews on Amazon.com indicating that dissatisfied

customers did not purchase more than one or two bottles of the products); <u>id.</u> at 6 (reviews on Walmart website indicating that dissatisfied customers would not continue the product and would return it); <u>id.</u> at 7-8 (reviews on drugstore.com indicating that customers who did not feel relief after a few weeks would not repurchase); <u>id.</u> at 13 (reviews on Costco website indicating that the customers who did not find joint relief from the product would not continue to buy that product). Accordingly, the strength of Plaintiffs' request for an injunction is certainly questionable. <u>See</u>, <u>e.g.</u>, <u>Wang</u>, 276 F.R.D. at 626.

In light of the obstacles that Plaintiffs and the Settlement Class would likely face in obtaining any relief whatsoever, including injunctive relief, and in light of the material benefits that the Settlement provides, the objection of TINA and AARP should be overruled. <u>See</u>, <u>e.g.</u>, Pls.' Mem. in Supp. of Mot. for Final Approval (Dkt. #153-1) at 14-20; Pls.' Supp. Mem. in Supp. of Mot. for Preliminary Approval (Dkt. #107) at 4-13; disc. <u>supra</u> at 9-12.

## C. Ms. Hammack's Objection To The Claims Process Is Based Upon A Misunderstanding Of That Process

Ms. Hammack also objects to the Settlement on the grounds that the claims process is "inadequate," purportedly because, in her belief, Claim Forms with deficiencies will be "rejected outright" and "without providing claimants with an opportunity to cure or explain such deficiencies." Hammack Objection (Dkt. #159) at 3. Ms. Hammack's objection, however, is based upon a misunderstanding of and erroneous assumptions regarding the claims process. <u>See</u> disc. <u>infra</u> at 12-13.

At this time, no claims have either been accepted or rejected. <u>See</u> Robin Decl., Ex. A, at ¶ 22. Instead, the Settlement Administrator appointed by the Court (<u>i.e.</u>, KCC) has received all Claim Forms and logged them in its system. <u>See</u> <u>id.</u> Once Final Approval is granted, KCC will evaluate all claims and provide a list to Class Counsel and Defendants' Counsel of Valid Claims as well as any claims that may have any deficiencies. <u>See</u> <u>id.</u> KCC and counsel for the Parties will then

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CHICAGO

12

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement

confer regarding the best manner in which to address the deficient claims, which generally involves sending notice to the Settlement Class Member of the deficiency and allowing him or her a period of time in which to cure that deficiency. See id. A claim will only be denied for a deficiency, however, after the Settlement Class Member has had an opportunity to correct the claim. See id. And given that the Parties and KCC intend to do exactly what Ms. Hammack has requested, her objection should be overruled. See Hammack Objection (Dkt. #159) at 3; Robin Decl., Ex. A, at ¶ 22.

## III.  CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court overrule the objections and grant final approval of the Second Amended Settlement Agreement.  Defendants further request any other relief that the Court deems appropriate.

Dated:  October 8, 2015        Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Kathleen P. Lally*

Kathleen P. Lally
Attorney for Defendants
Schiff Nutrition International, Inc. and
Schiff Nutrition Group, Inc.

LATHAM & WATKINS LLP
Mark S. Mester (*Admitted Pro Hac Vice*)
  mark.mester@lw.com
Kathleen P. Lally (*Admitted Pro Hac Vice*)
  kathleen.lally@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois  60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

LATHAM & WATKINS LLP
Steven Lesan (Bar No. 294786)
  steven.lesan@lw.com
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
Facsimile:  (858) 523-5450

LATHAM & WATKINS LLP
Mark S. Mester (*Admitted Pro Hac Vice*)
   mark.mester@lw.com
Kathleen P. Lally (*Admitted Pro Hac Vice*)
   kathleen.lally@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

LATHAM & WATKINS LLP
Steven Lesan (Bar No. 294786)
   steven.lesan@lw.com
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

Attorneys for Defendants
SCHIFF NUTRITION INTERNATIONAL,
INC. and SCHIFF NUTRITION GROUP, INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LERMA, an Individual, and NICK PEARSON, an Individual, On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation, and SCHIFF NUTRITION GROUP, INC., a Utah Corporation,<br><br>                Defendants. | CASE NO. 3:11-cv-01056-MDD<br><br><u>CLASS ACTION</u><br><br>**EXHIBIT A TO DEFENDANTS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Ex. A Defs.' Response to Objections to
Final Approval of Settlement

|  |  |
|---|---|
| LUIS LERMA, an Individual, and NICK PEARSON, and Individual, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware Corporation, and SCHIFF NUTRITION GROUP, INC., a Utah Corporation<br><br>Defendants. | Case No. 3:11-cv-01056-CAB-MDD<br><br>**SUPPLEMENTALDECLARATION OF ERIC ROBIN RE: NOTICE PROCEDURES** |

I, **ERIC ROBIN,** declare:

1.     I am a Senior Consultant at Kurtzman Carson Consultants LLC ("KCC"), located at 75 Rowland Way, Suite 250, Novato, California.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.  This declaration supplements the declaration Gina M. Intrepido-Bowden executed on August 10, 2015 and is to provide the Court with updated information regarding the notice plan for and administration of the settlement in the above-captioned case.

2.     KCC was retained by the parties and appointed by the Court to serve as the Settlement Administrator to, among other tasks, publish the Notice, Internet Banners and Press Release; to make the Full Notice, Claim Form and other documents available to Class Members; receive and process Claim Forms, Exclusions and Objections, and other Class Member inquiries; and to establish and maintain a settlement website and perform other duties as specified in the Second Amended Settlement Agreement preliminarily approved by this Court on April 27, 2015. Copies of the Full Notice and Claim Form are attached hereto as Exhibits A and B, respectively.

3.     **CAFA Notification**. In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, KCC compiled a CD-ROM containing the following documents: original Class Action Complaint, First Amended Class Action Complaint, Answer of Defendant Schiff Nutrition

International, Inc. to Plaintiff Luis Lerma's First Amended Complaint, Second Amended Class Action Complaint, Answer of Defendants Schiff Nutrition International, Inc. And Schiff Nutrition Group, Inc. to Plaintiff Luis Lerma's Second Amended Complaint, Third Amended Class Action Complaint, Answer of Defendants Schiff Nutrition International, Inc. and Schiff Nutrition Group, Inc. to Third Amended Complaint, Long Form Notice, Publication Notice, Internet Banner Ad Notices, Settlement Agreement and General Release, and a cover letter (collectively, the "CAFA Notice Packet"). A copy of the cover letter is attached hereto as Exhibit C.

4.     On April 3, 2014, KCC caused sixty (60) CAFA Notice Packets to be mailed via Priority Mail from the U.S. Post Office in Novato, California to the parties listed on Exhibit D, i.e., the U.S. Attorney General, the Attorneys General of each of the 50 States and the District of Columbia, the Attorneys General to the 5 U.S. Territories, as well as parties of interest to this Action.

5.     On or before September 24, 2014, KCC compiled a Supplemental CAFA CD-ROM containing the following documents: Amended Settlement Agreement and General Release (including all exhibits thereto) Published Summary, Long Form Notice, which accompanied a Supplemental CAFA cover letter (collectively, the "Supplemental CAFA Notice Packet").  A copy of the Supplemental CAFA cover letter is attached hereto as Exhibit E.

6.     On September 24, 2014, KCC caused sixty (60) Supplemental CAFA Notice Packets to be mailed via Priority Mail from the U.S. Post Office in Novato, California to the parties listed on Exhibit F, i.e., the U.S. Attorney General, the Attorneys General of each of the 50 States and the District of Columbia, the Attorneys General to the 5 U.S. Territories, as well as parties of interest to this Action.

7.     On October 31, 2014, Counsel was contacted by the Assistant Attorney General for Wisconsin requesting a copy of the original Class Action complaint.  Counsel fulfilled this request on or before November 3, 2014.

8.     On or before May 5, 2015, KCC compiled a Supplemental CAFA CD-ROM containing the following documents: Second Amended Settlement Agreement and General Release, Proposed Claim Form, Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program, Court Order dated April 29, 2015, setting a hearing on the Joint Motion Seeking Approval of Limited Modification to the Settlement Agreement, which accompanied a Second Supplemental CAFA cover

Supplemental Declaration of Eric Robin Re: Notice Procedures

letter (collectively, the "Second Supplemental CAFA Notice Packet"). A copy of the Second Supplemental CAFA cover letter is attached hereto as Exhibit G.

9.     On May 5, 2015, KCC caused sixty-one (61) Second Supplemental CAFA Notice Packets to be mailed via Priority Mail from the U.S. Post Office in Novato, California to the parties listed on Exhibit H, i.e., the U.S. Attorney General, the Attorneys General of each of the 50 States and the District of Columbia, the Attorneys General to the 5 U.S. Territories, as well as parties of interest to this Action.

10.     On June 10, 2015, Counsel was contacted by the District of Columbia Office of the Attorney General regarding requiring a password to access the documentation contained on the Second Supplemental CAFA CD Rom. KCC provided the information to Counsel same day.

11.     As of the date of this Affidavit, KCC has received no additional responses or requests to any of the CAFA Notice Packet mailings from any of the recipients identified in paragraphs 4, 6 or 9 above.

12.     **Published Notices, Internet Banners and Press Release.**  KCC's Legal Notification Services Team has successfully implemented each element of the Court-approved Notice Plan, including a schedule of paid notices in leading consumer magazines and on a variety of websites to reach the Class. To fulfill the notice requirement of California's Consumer Legal Remedies Act ("CLRA"), the notice program also included four placements, once a week for four consecutive weeks in the *San Diego Union Tribune*.

\\
\\
\\
\\
\\
\\
\\
\\
\\

To establish a reach base, Notices were placed in leading consumer publications. Notices appeared on the dates and pages indicated below:

| Publication | Issue date[1] | On-sale date[2] | Page |
|---|---|---|---|
| *Arthritis Today* | Sept/Oct 2015 | August 18, 2015 | 42 |
| *Cooking Light* | September 2015 | August 14, 2015 | 74 |
| *First For Women* | September 7, 2015 | August 17, 2015 | 111 |
| *Parade* | July 19, 2015 | July 19, 2015 | 10 |
| *People* | July 27, 2015 | July 17, 2015 | 63 |
| *Prevention* | September 2015 | August 18, 2015 | 165 |
| *Reader's Digest* | September 2015 | August 11, 2015 | 133 |

13.     The consumer publication effort alone reached approximately 53.9% of likely Class members. Copies of the publication notices as they appeared are attached as Exhibit I.

14.     To extend reach further, 95 million unique internet banner impressions targeted to adults 35 years of age or older were purchased to appear on a variety of websites. A total of 95,067,592 unique impressions delivered from June 29, 2015 through August 2, 2015, resulting in an additional 67,592 unique impressions at no extra charge. The internet effort alone reached approximately 58.9% of likely Class members. Screenshots of the internet banner notices, as they appeared on various websites, are attached as Exhibit J.

15.     Additionally, 412,300 internet impressions targeted to adults 35 years of age or older were purchased to appear on Google Search under keywords related to the settlement (e.g., arthritis relief, arthritis remedies, arthritis supplements, glucosamine, glucosamine supplement, glucosamine supplements, glucosamine tablets, joint pain settlement, joint pain supplements, joint settlement, joint supplements, schiff class action, schiff class action settlement, schiff glucosamine, schiff nutrition, schiff settlement, schiff vitamins, class action, class action lawsuit, class action lawsuits, class action settlement, class action cases, class action complaint, class action notice, class action refund, class action

---

[1] The date that appears on the cover of the publication.
[2] The date that the issue is first available to readers.

status, class action website, class actions, defendant class action, kcc class action, open class action). A total of 412,352 impressions delivered from June 29, 2015 through August 2, 2015, resulting in an additional 352 impressions at no extra charge. Screenshots of the Google search notices, as they appeared, are attached as Exhibit K.

To fulfill the CLRA notice requirement, four eighth-page notices (approximately 3.96" x 7") appeared once a week for four consecutive weeks within the classified section of the San Diego Union Tribune Metro Distribution. The Notice appeared on the dates and pages indicated below. Copies of the newspaper notices as they appeared are attached as Exhibit L.

| Publication | Issue/On-sale date | Page |
|---|---|---|
| *San Diego Union Tribune* | June 29, 2015 | F5 |
| *San Diego Union Tribune* | July 6, 2015 | F1 |
| *San Diego Union Tribune* | July 13, 2015 | F2 |
| *San Diego Union Tribune* | July 20, 2015 | F4 |

16.     Combined, the media notice effort reached approximately 81.1% of likely Class members. Coverage was further enhanced by the CLRA notice placements and the internet paid search ads.

17.     **Interactive Voice Response.** On June 25, 2015, KCC established an Interactive Voice Response (the "IVR") system to be established (877-219-9780) to provide information about the settlement and to record requests for Notice Packets. As of October 5 2015, 1,789 calls have been received by the IVR.

18.     **Website.** On June 25, 2015, KCC also established a website (www.schiffglucosaminesettlement.com) dedicated to this settlement to provide additional information to the Class Members and to answer frequently asked questions. Visitors to the website can download the (1) Class Notice; (2) Claim Form; (3) Preliminary Approval Order; (4) Order re: Joint Motion for Approval of Limited Modification to the Amended Settlement Agreement; and (5) Second Amended Settlement Agreement and General Release. Visitors can also submit claims online and opt out online. As of October 5, 2015, the website has received 58,134 visits.

19. **Facebook.** On June 25, 2015, KCC cause a Facebook page to be established to provide information about the Settlement (https://www.facebook.com/pages/Lerma-v-Schiff-Nutrition-International-Inc-Class-Action-Settlement/825053464255918?ref=bookmarks).

20. **Requests for Exclusion.** The deadline for Class Members to request to be excluded from the class was a postmarked deadline of September 24, 2015. As of the date of this declaration, KCC has received 7 requests for exclusion. A list of the Class Members requesting to be excluded is attached hereto as Exhibit M.

21. **Claim Forms.** As of the date of this declaration, 40,167 Claim Forms have been filed by Class Members. This includes 910 Claim Forms that contain proof of purchase, for a potential dollar value of $31,170.00, and 38,426 Claim Forms that do not contain proof of purchase, for a potential dollar value of $431,583.00. Not all of the Claim Forms received by KCC have been processed, so these counts are not 100% complete. In addition, there is some overlap between the two groups as Class Members can make claims for purchases with and without proof of purchase. The deadline to submit a Claim Form was September 24, 2015 and KCC will continue to process timely Claim Forms as they are received.

22. **Claim Processing.** When KCC receives a Claim Form, data entry is completed to capture all relevant data. The data will be reviewed to determine the validity of each Claim Form. Once all of the Claim Forms have been received and processed, KCC will provide a list of Valid Claims as well as any claims that may have deficiencies to the parties. KCC will then confer with the parties regarding the best manner to address deficient claims, which generally involves sending a Notice of Deficient Claim Form to the Settlement Class Member, and allowing them a set period of time to cure their deficiency. Only if the deficiency is not cured, will a claim be denied. Once the validity of Claim Forms has been determined, KCC reviews all Claim Forms to ensure no duplicative Claim Forms are being paid. KCC looks at various combinations of name and address to determine if any duplicative Claim Forms were filed. Once all duplicative Claim Forms have been identified, KCC will conduct a final Claim Form validation at which time KCC will report to all parties the count of valid and invalid Claim Forms.

23. From the commencement of our administrative work through the end of August 2015, a total of $856,736.13 has been incurred in expenses and staff hours performed by KCC. There is still a

1  fair amount of administrative work remaining (i.e. claims processing, distribution, post distribution
2  reporting, etc.).  KCC estimates that its final cost of administration will be $920,485.25.
3
4  I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true
5  and correct to the best of my knowledge and that this declaration was executed this 6th day of October
6  2015 at Novato, California.
7
8  _____
9  Eric Robin
10

Supplemental Declaration of Eric Robin Re: Notice Procedures

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 |     I hereby certify that on October 8, 2015 a copy of the foregoing document |
| 3 | was filed electronically with the Clerk of the Court using the Court's CM/ECF |
| 4 | electronic filing system, which will send an electronic copy of this filing to all |
| 5 | counsel of record. |

6
7
8
9
10

/s/ *Kathleen P. Lally*
Kathleen P. Lally
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: kathleen.lally@lw.com

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

Case No. 3:11-cv-01056-MDD
Defs.' Response to Objections to
Final Approval of Settlement