1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| LUIS LERMA, an individual, and NICK PEARSON, an individual, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SCHIFF NUTRITION INTERNATIONAL, INC., a Delaware corporation, and SCHIFF NUTRITION GROUP, INC., a Utah corporation,<br><br>      Defendants. | Case No.:  11cv1056-MDD<br><br>**ORDER OF FINAL APPROVAL OF CLASS SETTLEMENT** |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

  Before this Court is Plaintiffs' motion for final approval of class settlement and provisional class certification pursuant to FED. R. CIV. P. 23.

BACKGROUND

  Plaintiffs Luis Lerma, Nick Pearson, and Muriel Jayson ("Named Plaintiffs") on behalf of themselves and all others similarly situated, brought this class action Complaint against Defendants Schiff Nutrition International, Inc. and Schiff Nutrition Group, Inc. (ECF No. 33).  Plaintiffs

1

alleged that Defendants violated the Consumers Legal Remedies Act, Civil Code § 1750, et seq.; Unfair Competition Law, Business and Professions Code § 17200 et seq.; Illinois Consumer Fraud Act, 502/1, et seq.; personal injuries/medical monitoring; personal injuries/negligence; and breach of express warranty.  (ECF No. 33-1 at 14-20).

On November 21, 2014, the Court issued an order that preliminarily approved the settlement agreement; 2) provisionally certified the class; 3) conditionally certified Plaintiffs Lerma and Pearson as Class Representatives; and 4) conditionally appointed Elaine A. Ryan, Stewart M. Weltman, and Jeffrey Carton as Class Counsel.  (ECF No. 113).

On August 10, 2015, Plaintiffs filed a Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Expenses, and Service Awards.  (ECF No. 153).

On October 30, 2015, the Court held a fairness hearing.  (ECF No. 169). Counsel for Plaintiff and counsel for Defendant appeared.  No Class Members or objectors appeared.

## TERMS OF PROPOSED SETTLEMENT

The proposed settlement class (the "Class") consists of "[a]ll residents of the United States who purchased for personal use and not resale or distribution, a Covered Product between January 1, 2005, and May 27, 2015." (ECF No. 153-1 at 22).  Class Members do not include Schiff, its affiliates, its employees, officers, directors, agents, representatives and their immediate family members, and the legal representatives, successors, or assigns of such excluded persons or entities.  (*Id.*).  In addition, Class Members do not include the judges who have presided over the litigation and their immediate family members.  (*Id.*).

1    I.     Class Benefits

2        A.  Monetary relief

3        "[E]very Settlement Class Member is entitled to seek monetary

4 compensation." (*Id.*).  Specifically,

> Settlement Class Members who do not have Adequate Proof of
> Purchase are entitled to reimbursement of $3 per bottle of the
> Covered Products purchased up to a maximum of four bottles
> per household.  Settlement Class Members who have
> Adequate Proof of Purchase (e.g. receipts, intact boxes or
> bottles that display readable UPC code and readable lot
> number, or similar documentation that identifies the Covered
> Product and date and location of purchase) are also entitled to
> reimbursement of $10 for each purchased bottle of the
> Covered Products up to five bottles per household.

(*Id.* at 22-23).

The Settlement Agreement also provides for Class Members to receive additional monetary relief if the number of claimants is small.  Specifically:

> [N]o Settlement Funds will revert to Schiff.  If the Valid
> Claims do not equal or exceed the Available Cash Award
> Total, the payment to each Settlement Class Member who
> submits a Valid Claim with Adequate Proof of Purchase will
> be increased *pro rata* up to a maximum of triple what the
> Settlement Class Member would be entitled to under the
> Settlement Agreement.  If, after that increase, funds remain
> in the Settlement Fund, then payment to each Settlement
> Class Member who submits a valid claim without Adequate
> Proof of Purchase will also be increased *pro rata*, this time up
> to a maximum of double what the Settlement Class Member
> would be entitled to under the Settlement Agreement.  If after
> that increase, funds still remain in the Settlement Fund, any
> residual amounts are to be divided *pro rata* among the
> Settlement Class Members who have submitted Valid Claims.

(*Id.* at 23).

1    The Settlement Agreement also provides "that the costs associated with

2  the dissemination of notice to the Settlement Class and the administration of

3  the claims process will be paid from the Settlement Fund." (*Id.* at 24).

4  According to the Parties, the total amount of these cost should not exceed

5  $1.5 million. (*Id.*). Class Counsel now expect these costs to be less than

6  expected, and the estimated savings of approximately $580,000.00 will revert

7  to the fund available to pay the Class Members. (ECF No. 166 at 5 n.5).

8    B. Injunctive Relief

9    "[F]or a period of twenty four months commencing six months after

10  the Effective Date, Schiff will not make the following statements in the

11  packaging or marketing of the Covered Products: 'repair joint,' 'repair

12  cartilage,' 'rebuild joints,' 'rebuild cartilage,' 'rejuvenate joints,' 'rejuvenate

13  cartilage,' or any other version of those statements using variations of the

14  terms (i.e. the 'reconstruction representations')." (ECF No. 153-1 at 23). For

15  the covered products that Defendants no longer manufacture, monetary relief

16  is the only remedy under this Settlement. (*Id.* at n.7).

17  "Schiff may seek Settlement Class Counsel's agreement to modify the

18  agreed upon labeling changes only if, after the date of Final Approval,

19  Defendants possess and rely upon an independent, well-conducted, published

20  clinical trial that substantiates the representations." (*Id.* at 23-24). Absent

21  an agreement, Defendants shall seek approval from the Court to modify the

22  agreed upon labeling changes. (*Id.* at 24).

23  II.   Class Notice

24   A.  Consumer Publication/Internet Publication

25    In compliance with the Court's Preliminary Approval Order dated

26  November 21, 2014, (ECF No. 113), Defendants provided notice to the Class

4

by using "a combination of notice placements in well-read consumer publications and on a variety of websites to effectively reach Class Members." (ECF No. 113 at 13). "[N]otices were placed in the following national publications: *Parade*, *People*, *Arthritis Today*, *Cooking Light*, *First for Women*, *Prevention*, and *Reader's Digest*." (ECF No. 153-1 at 50). Additionally, notices were placed on the internet networks of "Google Display, Google Search, Microsoft Display, Yahoo RMX and Facebook." (*Id.*). According to Ms. Intrepido-Bowen, between June 29, 2015, and August 2, 2015, consumer publications are estimated to have reached 53.9% of likely Class Members and internet publications are estimated to have reached 58.9% of likely Class Members. (Decl. Intrepido-Bowen, ECF 153-6 at 4).

B. Toll Free Number

A toll free number was established June 25, 2015, in accordance with the Court's order of preliminary approval. (ECF No. 113 at 14). As of August 3, 2015, 914 calls were received. (Decl. Intrepido-Bowden, ECF No. 153-6 at 5).

C. Website Notice

A webpage was also established June 25, 2015, at www.SchiffGlucosamineSettlement.com. (*Id.*). This informational website allows Class Members to download Class Notice; Claim Forms; Copy the Preliminary Approval Order; Copy the Joint Motion for Limited Modification of Settlement Agreement; Copy the Second Amended Settlement Agreement and General Release. (*Id.*). Exclusion forms and claim forms could also be filed online. (*Id.*). As of August 3, 2015, the website had received 26,928 visits. (*Id.*).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

III.     Right to Elect Not to Participate in Settlement

The Notice also informed the Class Members of their right to opt-out or exclude themselves from the Settlement, appear through their own counsel, object to the terms of the Settlement along with the form that the objection should take, the deadlines for opt-out/exclusion or objection, the date of the final approval hearing, the scope of the claims released if a member of the Settlement Class does not opt-out and remains in the Settlement Class, and the amount of potential Plaintiffs' Service Award and Attorneys' Fee Award. (ECF No. 153 at 34-35).  There have been seven exclusion requests as of September 24, 2015.  (Supplemental Decl. Robin, ECF No. 166-1 at 7).

DISCUSSION

I.     Class Certification

Plaintiff seeks certification of a settlement class under Federal Rule of Civil Procedure 23(b)(3).  "To obtain certification of a class action . . . under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . . prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S.Ct. 1184, 1191 (2013) (internal citations omitted).  In this case, the Court preliminarily certified the proposed settlement class.  (ECF. No. 113).  At that time, the Court concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  (*Id*.).  The Court also

found the purported class satisfied the predominance and superiority requirements of Rule 23(b)(3).  (*Id.*).

A list of those putative Class Members who have timely elected to opt out of the Settlement and Class, and who are therefore not bound by the Settlement, the provisions of the Settlement Agreement, this Order and the final Judgment will be entered by the Clerk of Court.  All other Class Members (as permanently certified below) shall be subject to all of the provisions of the Settlement, the Settlement Agreement, this Order, and final Judgment to be entered by the Clerk of Court.

II.    Notice

Notice to the putative Class Members was comprised of consumer and internet publications and the creation of an informational website directed to all Class Members.  The Court finds this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class Members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.

III.    Fairness of the Settlement

A.  Legal Standard

Courts require a higher standard of fairness when a settlement takes place prior to formal class certification to ensure class counsel and defendants have not colluded in settling the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Ultimately, "[t]he court's intrusion upon what is

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "The question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Courts consider several factors when determining whether a proposed "settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1027). These factors may include one or more of the following: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (holding only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the settlement).

11cv1056-MDD

B.  Analysis

    1.  The strength of the case and the risk, expense, complexity, and likely duration of further litigation

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

> The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal citations omitted).

Plaintiffs assert that "[t]he proposed Settlement is fair, reasonable and adequate and reflects the careful consideration by the Parties of the benefits, burdens, and risks associated with continued litigation of this Action."  (ECF No. 153-1 at 24-25).  The Court agrees, given these risks, actual recovery through settlement confers substantial benefits on the Class that outweigh potential recovery through full adjudication.

    2.  Stage of the proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table."  *Linney*,

151 F.3d at 1239 (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)) (internal quotations omitted). "Rather, the court's focus is on whether the 'parties carefully investigated the claims before reaching a resolution.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)).

Here, a Third Amended Complaint had been filed two years before any settlement was finalized. (ECF Nos. 35, 81). The parties participated in five private mediation sessions and engaged in significant discovery. (ECF No. 153-1 at 36). Discovery included "formal and informal discovery necessary to facilitate and evaluate the strengths and weaknesses of the case." (ECF No. 153-1 at 35). Over 350,000 pages of documents were produced to the Named Plaintiffs. (*Id.*). Responses to interrogatories and initial and rebuttal expert reports were also exchanged. (*Id.*). The Named Plaintiffs obtained and analyzed the science regarding Defendants' products with the assistance of Dr. Thomas J. Schnitzer, M.D., Ph.D., an expert in joint relief remedies. (*Id.*). Based upon the parties' investigation, discovery and settlement negotiations that have taken place in this case, granting final approval is justified.

### 3. The settlement amount

To assess whether the amount is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. While settlement amounts that are close to the plaintiffs' estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential

recovery do not preclude a court from finding that the settlement offer is fair. *Id.* (finding settlement amount constituting one-sixth of the potential recovery was fair and adequate).  Thus, district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation.  *Id.*

The Third Amended Complaint in this case alleges that each Class Member is entitled to monetary compensation and injunctive relief for violations of the Consumers Legal Remedies Act, Civil Code § 1750, et seq.; Unfair Competition Law, Business and Professions Code § 17200 et seq.; Illinois Consumer Fraud Act, 502/1, et seq.; personal injuries/medical monitoring; personal injuries/negligence; and breach of express warranty. (ECF No. 113 at 2).

### a.    Monetary relief

The parties have agreed that Defendants will establish a settlement fund to be paid to Class Members who make valid claims.  "Settlement Class Members who do not have Adequate Proof of Purchase are entitled to reimbursement of $3 per bottle of the Covered Products purchased up to a maximum of four bottles per household.  Settlement Class Members who have Adequate Proof of Purchase are also entitled to reimbursement of $10 for each purchased bottle of the Covered Products up to five bottles per household."  (ECF No. 153-1 at 22).  As noted herein, the Settlement Class Members could also receive additional remuneration resulting from cost savings in notice, attorney fees and costs, and low submission of valid claims. As of October 6, 2015, 40,167 Claim Forms have been filed by Class Members. (Supplemental Decl. Robin, ECF No. 166-1 at 7).

The Court has considered and rejects Objector Hammack's objection that the monetary relief is inadequate because it does not disgorge Defendant of profits reaped from the alleged deceptive marketing, and because the cost of the label changes to Defendant have not been provided to the Class.

First, restitutionary disgorgement, which is the price paid minus the value actually received—not nonrestitutionary disgorgement of profits—is the proper measure of damages on the unfair competition and false advertising claims (CAL. BUS. & PROF. CODE. §§ 17200 and 17500); *see In re POM Wonderful LLC*, Case No. ML-10-02199-DDP, 2014 WL1225184, *3 (C.D. Cal. Mar. 25, 2014) (measure of damages for deceptive advertising was the price paid minus value received—not a full refund); CAL. CIV. CODE § 3343; *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 799 (4th Dist., Div. 1, 2015) (rejecting argument that defendant should be ordered to disgorge profits to class of purchasers as a deterrent for deceptive advertisements violating §§ 17200 and 17500); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 675 (2d Dist., Div. 5, 2006).  These laws focus on making the victim whole, not on punishing or deterring the defendant, no matter how egregious the misconduct.  *In re Tobacco Cases II*, 240 Cal. App. 4th at 795. Any deterrent effect resulting from an award for false advertising violations is merely fortuitous.  *Id*.

And, although punitive and actual damages are available under the Consumer Legal Remedies Act, CAL. CIV. CODE § 1780, obtaining actual or punitive damages in a class action generally requires individualized assessments of damages that are often not susceptible to class treatment. *See, e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 541-42 (N.D. Cal. 2012) (granting certification for purposes of declaratory and injunctive

1    relief but denying certification to the extent class sought money damages).

2         In sum, the possibility of recovering more money from Defendants to

3    serve as a deterrent are extremely remote.  The cost of labeling changes is

4    irrelevant to calculating the damages available for the alleged claims.

5         Second, the monetary relief provided in the Settlement is the result of a

6    compromise of claims that carry significant risks.  *See, e.g., In re Tobacco*

7    *Cases II*, 240 Cal. App. 4th 779 (finding plaintiff class proved defendant's

8    advertisements violated unfair competition and false advertising laws, but

9    refusing to award plaintiff any damages for lack of evidence, finding

10   defendant to be the prevailing party, and ordering plaintiff to pay defendant

11   $764,552.73 in costs).  The adequacy and fairness of the compromise cannot

12   be held to the standard of the ideal recovery; the real risks of litigation must

13   be considered.  *Hanlon*, 150 F.3d at 1027; *Linney*, 151 F.3d at 1242.

14        Third, the parties have shown that, given the current claims statistics,

15   each Class Member is likely to receive more than they actually paid for the

16   Covered Products, such that Class Members may receive more than they

17   could have obtained if they filed individual lawsuits.

18        Objector Hammack further objects that the parties do not disclose if the

19   Settlement Fund is paid for by Defendants' insurance and that it would be

20   unfair to the Class if the Settlement Fund is paid for entirely through

21   insurance proceeds.  Objector Hammack is concerned that the Settlement will

22   have no deterrent effect on Defendants if it is funded by insurance.  The

23   Court disagrees with Objector Hammack's unsupported assumptions that the

24   Defendants must disclose the source of the settlement funds and that

25   insurance funding invites Defendants to reoffend.  Even if the Settlement

26   provides little or no guard against recidivism, it nevertheless provides

1    adequate relief for the alleged harms, particularly given the risks to Plaintiffs
2    and the putative Class of pursuing the litigation further.  *Hanlon*, 150 F.3d
3    at 1027.

4         The Court has also considered and rejects Objector Smallwood's
5    objection that the amount of monetary relief provided is inadequate.  Class
6    Counsel responds to Objector Smallwood's demand for reimbursement for
7    doctor's bills and for mental frustration and anguish by explaining that
8    Objector Smallwood may opt out of the Settlement and Class and
9    independently file her personal injury claims against Defendants.  (ECF Nos.
10   166 at 11, 167 at 7 n.3).  The Settlement's opt-out provisions sufficiently
11   address Objector Smallwood's concern.

12        Accordingly, the Court finds the monetary relief reasonable, adequate
13   and fair, even though the Settlement does not provide for disgorgement or
14   disclosure of insurance involvement or the cost of label changes.

15                         b.      Injunctive relief

16        In accordance with the Settlement Agreement, "for a period of twenty
17   four (24) months commencing six (6) months after the Effective Date,
18   [Defendants] will not make the following statements in the packaging or
19   marketing of the Covered Products: 'repair joints,' 'repair cartilage,' 'rebuild
20   joints,' 'rebuild cartilage,' 'rejuvenate joints,' 'rejuvenate cartilage,' or any
21   version of those statements using variations of the terms."  (ECF No. 153-1 at
22   23).  Additionally, the Settlement Agreement provides that Defendants may
23   request agreement to modify the labeling changes if, after the Final Approval
24   is granted, Defendants possess independent, well-conducted, published
25   clinical trial/s that substantiate the Defendants' representations for the
26   Covered Products.  If no agreement can be reached, the Defendants may seek

1    approval from the Court to modify the labeling changes.  (*Id.* at 24).

2          Truth In Advertising, Inc. ("TINA") and AARP oppose the terms of this

3    Settlement on the grounds that the injunctive relief "bans just six types of

4    phrases from the label of defendants' glucosamine supplement for a mere two

5    years."  (ECF No. 168 at 2; *see also* ECF No. 144 at 2-3).  TINA and AARP

6    argue that the "amended settlement continues to allow the use of deceptive

7    marketing phrases, including, for example, 'build cartilage,' 'improve joint

8    function,' 'reduce joint pain,' and other synonymous phrases."  (ECF No. 168

9    at 2).  The Court agrees with TINA and AARP that the injunctive relief has

10   limited value to the Class.  Nevertheless, the Court has weighed that limited

11   value against the small or nonexistent potential value of the injunctive relief

12   Class Counsel could be expected to obtain at trial and the very significant

13   risks of continuing the litigation.  *Linney*, 151 F.3d at 1242.  The Court finds

14   that the injunctive relief provided in the Settlement is more beneficial to the

15   Class than the possibility of injunctive relief after prolonged and risky

16   litigation.  Accordingly, the limited injunctive relief is fair, adequate and

17   reasonable in this instance.

18         The Court has considered and rejects Objector Hammack's concern that

19   the injunction is inadequate because its scope is limited to 24 months.  The

20   Court acknowledges that a 5 year injunction, as urged by Objector Hammack,

21   would be more beneficial to the Class, but, as the parties correctly argue, the

22   Court's role is to determine whether the relief is adequate and fair, not

23   whether it is perfect or even optimal.  *Hanlon*, 150 F.3d at 1027.

24         The Court further rejects Objector Hammack's objection that the relief

25   is illusory because Defendants can resume deceptive practices at any time

26   before expiration of the 24 month period merely by petitioning the court.  As

1  the parties argue, the Settlement Agreement provides a safeguard against

2  this by only permitting lifting of the injunction if Defendants present

3  independent, well-conducted, published clinical trial/s supporting Defendants'

4  representations.

5      Finally, Objector Hammack objects that the relief provided is

6  inadequate out of fear that claim forms will be "rejected outright for any

7  deficiency without providing claimants with an opportunity to cure or explain

8  such deficiencies."  (ECF No. 158 at 3).  The parties adequately address this

9  concern in their replies, explaining that if any claim form is rejected, notice of

10  the reason for rejection will be given to the claimant and the claimant will

11  have 30 days to correct the deficiency.  (ECF Nos. 166 at 8, 167 at 16-17).

12      Based upon the record before it, the Court finds that the amount and

13  terms of the proposed monetary benefits and injunctive relief to the Class

14  Members are fair and reasonable.

15          4.  Whether the Class has been fairly and adequately

16              represented during the settlement negotiations

17      Counsel who represented the Class included attorneys at the firms of

18  Bonnett, Fairbourn, Friedman & Balint, P.C., Denlea & Carton, Boodell &

19  Domanskis, LLC and Levin Fishbein Sedran & Berman.  Settlement Class

20  Counsel have "have substantial experience in litigating class actions."  (ECF

21  No. 153-1 at 36).  The Court has interacted with counsel on this case for over

22  four years.  Based upon the record before it, the Court finds Plaintiffs'

23  attorneys are qualified to conduct this litigation and to assess its settlement

24  value.  It appears that the Class has been fairly and adequately represented

25  during settlement negotiations.

26

### 5. Reaction of the Class to the proposed settlement

"The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor the Court may consider in its settlement approval analysis." *Shames* 2012 WL 5392159 at *8 (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976)). "The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Id.*; *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that eighty-four percent of the class filed no opposition).

In this case, Class Notice was published in June. As of October 8, 2015, there have been seven requests for exclusion. (ECF No. 166 at 4). A review of the electronic docket shows only three objections filed. (ECF Nos. 158, 161, 162). The small number of exclusions and objections, compared to the large number of Class Members who received Notice, favors the approval of the settlement.

### 6. Absence of collusion in the settlement process

In addition to the above considerations, "the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties. . . ." *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985) (citations omitted). In this case, the proposed settlement is the product of extensive negotiations conducted at arm's-length among counsel and a neutral mediator. (ECF No. 153-1 at 36). Class counsel and counsel for Defendants demonstrated they

1    were fully prepared to litigate this case through final judgment.  They

2    reached settlement with the assistance of a well-respected neutral.  The

3    Court is satisfied that the settlement process did not involve collusion.

4          Taking all of these factors together, the Court finds that the settlement

5    is fundamentally "fair, adequate and reasonable" pursuant to Rule 23(e), and

6    that no evidence of collusion exists.  The Court grants the Motion for Final

7    Approval of Class Action Settlement (ECF No. 153).

8    IV.    Motion for Attorneys' Fees and Costs and Incentive Awards

9          A. Class Representatives' Incentive Awards

10          Objector Hammack argues that the incentive awards in this case are

11   unreasonably large when compared to the relief flowing to the Class

12   Members, and thus unfair.  Objector Hammack's argument is based on a

13   misunderstanding of the incentive awards contemplated in the settlement.

14   Class Counsel seeks an *aggregate* $10,000 award to be *apportioned* among

15   the Class Representatives.  Objector Hammack misunderstood the award to

16   be $10,000 for *each* Class Representative, or a combined total of $30,000.  As

17   Class Counsel note in their Reply, Objector Hammack's suggested incentive

18   award of $2,790 per Class Representative is "just shy of" the $3,333.33

19   Plaintiffs actually requested for each of the three Class Representatives.

20          Moreover, the Court finds that the amount of incentive award

21   requested—$10,000 to be shared by the three Class Representatives—is well

22   within reason when considered in light of the entire settlement and relevant

23   precedent.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-

24   948 (9th Cir. 2015) (affirming incentive awards of $5,000 each for nine class

25   representatives, even though unnamed class members were to receive only

26   $12 each).  In assessing reasonableness of incentive awards, courts look to

"the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 947 (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

In this case, three Class Representatives will receive $3,333.33 each, totaling $10,000.00, while unnamed Class Members are expected to receive either $22, for claims not supported by valid proof of purchase, or $46, for claims supported by valid proof of purchase. Although it is true that the incentive awards are roughly 152 times larger than the lowest individual award, that ratio is smaller than the ones affirmed in *In re Online DVD-Rental* and similar cases. The Ninth Circuit focuses more on the number of class representatives, the incentive amount, and the proportion to the total settlement. *Id.* Here, there are fewer class representatives than in *In re Online DVD-Rental* and the $3,333.33 incentive awards are considerably less than the $5,000 amount the Ninth Circuit said was reasonable in *Staton* and *In re Online DVD-Rental.* *Id.*

Finally, the combined $10,000.00 in incentive awards is a mere .15% of the total settlement fund of $6.51 million, which is less than the .17% of the settlement fund approved by the Ninth Circuit in *In re Online DVD-Rental.* *Id.* Accordingly, the Court finds the aggregate $10,000.00 incentive award to the Class Representatives to be reasonable and fair.

### B. Costs

Class Counsel seek $134,197.86 in costs. (ECF No. 153-13 at 5 (Bonnett, Fairbourn, Friedman & Balint, P.C. incurred $96,490.66), 153-14 at 5 (Levin Fishbein Sedran & Berman incurred $34,374.72 and Boodell & Domanskis, LLC incurred $1,819.11), 153-15 at 4 (Denlea & Carton incurred

1    $1,513.37)).  These costs were for mediation, litigation services, experts, and

2    travel.  (*See* ECF Nos.153-13, 153-14, 153-15 and lodgments in support

3    thereof).  These are the types of expenses routinely charged to paying clients.

4    *See In re Omnivision Tech.,* 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008)

5    (explaining that class counsel "may recover their reasonable expenses that

6    would typically be billed to paying clients in non-contingency matters.").

7    Therefore, the Court grants Class Counsel's request for reimbursement of

8    expenses in the amount of $134,197.86.

9         C. Attorneys' Fees

10        Class Counsel seek an award of 33% of the $6.51 million "Settlement

11   Fund," which includes the funds to be disbursed directly to the Class,

12   incentive awards to Class Representatives, as well as notice costs,

13   administrative costs and attorneys' fees that benefit the Class.  The

14   Settlement Fund does not include a value for the two-year labeling

15   injunction.

16        "[C]ourts have an independent obligation to ensure that the award, like

17   the settlement itself, is reasonable…." *In re Bluetooth Headset Products*

18   *Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011).  The Ninth Circuit has

19   approved two different methods for calculating a reasonable attorneys' fee,

20   depending on the circumstances. *Id.* at 941-942.  Where, as here, "a

21   settlement produces a common fund for the benefit of the entire class, courts

22   have discretion to employ either the lodestar method or the percentage-of-

23   recovery method." *Id.* at 942 (citing *In re Mercury Interactive Corp.*, 618 F.3d

24   988, 992 (9th Cir. 2010)).

25        "Though courts have discretion to choose which calculation method they

26   use, their discretion must be exercised so as to achieve a reasonable result."

*Id.* (citing *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)).

> Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method.

*Id.* (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)).

The Ninth Circuit permits courts to award attorneys a percentage of the common fund "in lieu of the often more time-consuming task of calculating the lodestar." *Id.* at 942. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). Such circumstances include, but are not limited to: (1) the results achieved; (2) the risk involved in the litigation; (3) incidental or nonmonetary benefits conferred by the litigation; and (4) financial burden of the case on counsel. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002).

Class Counsel properly omit the value of injunctive relief from their percentage-of-the-fund calculations. Courts may only include the value of injunctive relief as part of the value of the common fund for purposes of calculating percentage-of-the-common-fund fee awards "in the unusual instance where the value to the individual class members… can be accurately ascertained…" *Staton v. Boeing Co.*, 327 F.3d 938, 974 (2003) (citing *Van Gemert*, 444 U.S. at 478-479)). When the value of injunctive relief is not included as part of the value of the common fund, courts should consider the

1   value of the injunctive relief as one of the "relevant circumstances" in

2   determining whether to allow an upward departure from the 25%

3   benchmark.  *Id.* (citing *Vizcaino*, 290 F.3d at 1049).  Although Class Counsel

4   offer an expert's opinion on the value of the injunctive relief, the opinion is

5   offered as to the detriment to Defendants and the value to society at large

6   and to future purchasers, rather than the specific value to these individual

7   Class Members.  (ECF No. 156-2 (sealed)).  The Court agrees with the

8   Objectors that the value of the two year injunction against use of a limited

9   set of terms in labels is difficult to quantify—especially given the reasonable

10  inference that many Class Members may not purchase this product again

11  regardless of labeling claims.  The value to these Class Members is

12  speculative.  Accordingly, the Court declines to include the value of injunctive

13  relief as part of the value of the common fund.

14       Here, the common fund is $6.51 million, without assigning the

15  injunctive relief any value.  Applying the 25% benchmark results in a fee

16  award of $1,627,500.

17       Class Counsel contend that an upward departure—a 33% award

18  totaling $2,148,300—is justified here because Class Counsel achieved better

19  financial and injunctive results than cases applying the 25% benchmark, and

20  because the two year labeling injunction provides nonmonetary benefits to

21  the Class that should be considered in the fee award.

22       The value of the injunctive relief is a relevant circumstance for this

23  Court to consider in deciding whether to apply a percentage higher than the

24  benchmark.  *Staton*, 327 F.3d at 974.  The Objectors dispute that the

25  injunctive relief value justifies a 33% award.  Objector Hammack contends

26  that the 33% fee requested by Class Counsel is excessive, and that the

injunctive relief provides little, if any, value to the Class.[1]  (ECF No. 158 at 3).  Objectors TINA and AARP object to the 33% fee requested as excessive and urge the Court to award a fee of 25% of the Settlement Fund.  (ECF No. 144 at 3-5).  The Court finds, contrary to the Objectors' assertion, that the injunctive relief carries some value to the Class Members.  The scope of the injunctive relief is the product of compromise between Class Counsel and Defendants, and the parties revised the injunction to provide more benefit to the Class after the Court expressed concerns about the originally-proposed injunction.  The injunctive relief is not as good as the Objectors would like, but it is a fair compromise given the significant risk that the Class would have obtained no injunctive relief if litigation continued.

Although the Court finds that the injunctive relief has some value to the Class, the Court does not find that the benefit is significant enough to justify an upward departure of the percentage applied to the common fund when considered in context with the other relevant circumstances.  The litigation lasted four years, obtained substantial success despite significant risks, and involved complex legal and factual issues.  Class Counsel proved to be experienced and successful.  But at times Class Counsel were inefficient and took detours that extended the settlement approval process and raised the expense of litigation.  The Court agrees with Objectors Hammack, TINA and AARP that a 33% award would be excessive, finds no basis for departing

---

[1] Objector Hammack also argues that the fee award should be further reduced because Class Counsel's motion for fees and costs was available only through the public record and not on the Class website.  Class Counsel replies that it would have provided the motion to any putative Class member who requested it, but that Objector Hammack made no effort to ask for the motion.  The Court finds that the fee motion was sufficiently accessible to the Class and denies Ms. Hammack's objection on this basis.

from the 25% benchmark in this case, and finds that a fee award of $1,627,500 is reasonable.

The Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944 (citing *Vizcaino.*, 290 F.3d at 1050-1051, and *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)). Application of the "lodestar method" provides a useful "cross-check" as to the reasonableness of a given percentage award. *Vizcaino,* 290 F.3d at 1050. Courts commonly use a rough calculation of the lodestar as a cross-check. *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015); *Hopkins v. Stryker Sales Corp.,* 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013).

Here, Plaintiffs contend that a rough calculation of the lodestar comes to $1,199,148.50, and that that figure should be adjusted by a 1.8 multiplier to a fee award of $2,148,300. (ECF No. 153-1 at 53). Comparing the non-enhanced rough lodestar figure they advance ($1,199,148.50) with the 25% percent of the common fund figure ($1,627,500.00), the multiplier is 1.32.

The Court reviewed the Plaintiffs' fee documentation to ensure their rough calculation is fair and reasonable to the class. Class Counsel includes all of the hours expended seeking to stay or withdraw this settlement, prompting this Court to perform its own rough lodestar calculation. Not only did the motions to stay and withdraw the settlement fail, but they were also aimed at preventing the settlement through which Counsel now seeks fees. A thorough review of Counsel's fee documentation reveals that Counsel seeks approximately 135.8 hours, or $83,562.00, for the failed attempt to stay or withdraw from the settlement. The Court was disturbed at the staggering

1   amount of time Class Counsel spent in preparing for this ill-considered effort,

2   particularly because the motion to stay the settlement was only 2 pages long,

3   the motion to reconsider this Court's denial of the motion to stay was only 3

4   pages long, the motion for withdrawal was 2 pages, the reply in support of

5   that motion was 10 pages, and the hearing lasted less than an hour.  (ECF

6   Nos. 116, 118, 120, 124, 131; Elaine Ryan 3/18/2015 time entry ("attend and

7   present at hearing (.9)")).

8        Even if the efforts had proven successful or beneficial to the Class, it

9   was unreasonable for attorneys of this experience, billing at these rates, to

10  have expended so many hours on these simple motions.  The Court further

11  notes that this detour caused actual delay of two months in the notice and

12  settlement approval schedule.

13       The Court finds the 135.8 hours, or $83,562.00, expended seeking stay

14  and withdrawal of the settlement must be excluded as unreasonable from the

15  lodestar cross-check rough calculation.  As a result of this deduction, Class

16  Counsel's cross-check lodestar amount is reduced to $1,115,586.50.  Based on

17  the rough lodestar figure calculated by the Court, the multiplier is 1.46.

18       Multipliers of 1 to 4 are commonly found to be appropriate in common

19  fund cases.  *Vizcaino,* 290 F.3d at 1051 n.6.  Courts have "routinely enhanced

20  the lodestar to reflect the risk of non-payment in common fund cases."

21  *Vizcaino,* 142 F.Supp.2d at 1305.

22       To restrict Class Counsel to the hourly rates they customarily
         charge for non-contingent work—where payment is assured—
23       would deprive them of any financial incentive to accept
         contingent-fee cases which may produce nothing. Courts have
24       therefore held that counsel are entitled to a multiplier for
         risk.
25
26  *Id.* at 1306.

The Court finds that the 1.46 multiplier is justified in this case by the risk of undertaking the case and by the value of the injunctive relief.  The actual value of the injunctive relief is subsumed in the multiplier and not included in the value of the common fund, thus avoiding double-counting its value and negating the need to calculate the actual value of the injunctive relief.

The Court finds the 1.46 multiplier is within the range of reasonableness.  Accordingly, the lodestar cross-check supports the reasonableness of the $1,627,500 fee award calculated using the 25% of the common fund method.  Consequently, the Court grants Plaintiffs' fee request in the amount of $1,627,500.

## CONCLUSION

IT IS HEREBY ORDERED that the motion for final approval of class action settlement (ECF No. 153), including the motion in support of award of attorneys' fees, costs and incentive awards is GRANTED as follows:

1. The Settlement and Settlement Agreement are hereby approved as fair, reasonable, adequate, and in the best interests of the Class, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied.  The parties are ordered and directed to comply with the terms and provisions of the Settlement Agreement.

2. The Court, having found that each of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, for purposes of settlement only, the Class is permanently certified pursuant to Federal Rule of Civil Procedure 23, on behalf of the following persons:

11cv1056-MDD

All residents of the United States who purchased for personal use, and not resale or distribution, a Covered Product between January 1, 2005, and May 27, 2015.

Specifically excluded from the Settlement Class are the following persons:

(i)     Schiff and its respective affiliates, employees, officers, directors, agents, and representatives and their immediate family members;

(ii)    Settlement Class Counsel; and

(iii)   The judges who have presided over the Litigation and their immediate family members.

The Class Members identified in the Declaration of Gina Intrepido-Bowen as having timely and properly elected to opt out from the Settlement and Class are hereby excluded from the Class and shall not be entitled to any of the benefits afforded to the Class Members under the Settlement Agreement.  The Court adopts and incorporates by reference its preliminary conclusions as to the satisfaction of Rules 23(a) and (b)(3) set forth in the Preliminary Approval Order (ECF No. 113) and notes again that because this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification class proposed in the Settlement Agreement.

3.  For purposes of Settlement only, the named Plaintiffs are certified as Representative of the Class and Class Counsel are appointed to

11cv1056-MDD

the Class.  The Court concludes that Class Counsel and the Class Representatives have fairly and adequately represented the Class with respect to the Settlement and the Settlement Agreement.

4. Notwithstanding the certification of the foregoing Class and appointment of the Class Representatives, for purposes effecting the Settlement, if this Order is reversed on appeal for the Settlement Agreement is terminated or not consummated for any reason, the foregoing certification of the Class and appointment of the Class Representative shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

5. Named Plaintiffs and all Class Members who are not excluded shall be deemed to fully and irrevocably release, waive, and discharge Defendants and each of its respective past, present and future owners, stockholders, parent corporations, related or affiliated companies, subsidiaries, officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, from any and all past, present, and future liabilities, claims, causes of actions (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), damages, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or

11cv1056-MDD

potential, or suspected or unsuspected, which Named Plaintiffs and all Class Members have or may have arising out of or relating to any act, omission, or other conduct alleged or otherwise referred to in the Action (the "Released Claims").

6.  With respect to the Released Claims, Named Plaintiffs and all Class Members who are not excluded shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of the general release.  Section 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

7. The Court has reviewed the application for an award of fees, costs, and expenses submitted by Class Counsel and the exhibits, memoranda of law, and other materials submitted in support of that application, and GRANTS costs in the amount of $134,197.86, an Incentive Award of $10,000.00 to be shared by the three Class Representatives, and attorneys' fees in the amount of $1,627,500.00.

8. Neither the Settlement Agreement nor any provision therein, any negotiations, statements or proceedings in connection therewith shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Plaintiff, any Class Member, Defendants, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in the action are or are not meritorious, and this Order, the Settlement Agreement or any such communications shall not be offered or received in evidence in any action or proceedings, or be used in any way as an admission or concession or evidence of liability or wrongdoing of any nature or that Plaintiff, any Class member, or any other person has suffered any damage; provided, however, that the Settlement Agreement, this Order, and the final Judgment to be entered thereon may be filed in any action by Defendants or Class Members seeking to enforce the Settlement Agreement or the final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, res judicata, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Settlement Agreement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future actions or other proceedings as to Released Claims and other prohibitions set forth in this Order that are maintained by, or on behalf of, the Class Members or any other person subject to the provisions of this Order.

11cv1056-MDD

9.  In the event that the Settlement Agreement does not become effective or is cancelled or terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the final Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null and void.

10. The action and the claims alleged therein are hereby ordered DISMISSED with prejudice.

11. Without in any way affecting the finality of this Order and the final Judgment, the Court hereby retains jurisdiction as to all matters relating to the interpretation, administration, and consummation of the Settlement Agreement.

IT IS SO ORDERED.

Dated:  **November 3, 2015**

Hon. Mitchell D. Dembin
United States Magistrate Judge